## MINER v. BENNETT.

1. **Fences**: ON DIVISION LINES: RIGHTS OF ADJOINING OWNERS. One who incloses land adjoining another's close, and does not own any part of the division fence, may throw any portion of such land open to common at pleasure.

2. ————: ————: WHAT CONSTITUTE. While a lawful fence is not necessary between adjoining farms to constitute occupation in severalty, still the partition fence must be such as will turn stock, and premises separated only by a hedge which is insufficient for that purpose must be considered as inclosed in common, within the meaning of section 1496 of the Code.

*Appeal from Keokuk Circuit Court.*

WEDNESDAY, APRIL 18.

THIS is an action to recover one-half the value of a fence, claimed to be a partition fence. The cause was tried by the court and judgment was rendered for forty-two dollars. The court gave the proper certificate necessary for an appeal. The defendant appeals. The material facts are stated in the opinion.

*Woodin & McJunkin*, for appellant.

*C. M. Brown*, for appellee.

DAY, CH. J.—The abstract contains all the evidence introduced upon the trial. It is entirely free from conflict, and establishes the following facts:

"Plaintiff is, and ever since 1869 has been, the owner of NE. ¼ of 1, 77, 13, and defendant is and since then has been the owner of the SE. ¼ of said section. In 1869, and before the SE. ¼ was inclosed, plaintiff planted a hedge on the line between said two tracts, inclosing the NE. ¼, and soon afterward defendant built a rail fence on the west half of said line, which two years thereafter became worthless and was removed before either of the notices hereinafter set forth was given; in October, 1875, plaintiff called in the proper fence viewers,

to view, divide said hedge, and assess the value of the half thereof given by them to defendant; defendant had legal notice thereof, and on the 25th day of October, 1875, said viewers met and made their report that said 'Miner shall have the east half of said line to keep a lawful fence upon, and said Bennett the west half for the same purpose; we also set a value on the fence now standing on the said Bennett's half, which we agree shall be forty dollars.' Immediately thereafter defendant had notice thereof, and plaintiff then demanded pay according to the terms of said award; said hedge on said day was not, never had been, and still is not a lawful fence, would not turn stock, but was of the value of forty dollars. Defend-ant inclosed his land in 1870; on the 12th day of October, 1875, and before the notice was served by plaintiff on defend-ant, the defendant served on plaintiff, at Prairie township, in said county, a notice in writing, in words and figures as fol-lows, to-wit:

'OCTOBER 12, 1875.

"'D. W. MINER: I hereby notify you that I shall open a 20 foot lane on my land, next to and adjoining a line imme-diately south of the NE. ¼ of Sec. 1, Tp. 77, R. 13, west, six months from this date.          M. D. BENNETT.'

"On the 13th day of April, 1876, defendant did open a lane of said width on said line, making a fence 20 feet south of the line of plaintiff's land, and open on a public highway at the east end thereof, but closed by bars at the west end, where defendant also owned land."

The question presented is purely one of law: whether under the above facts the defendant is legally bound to contribute to the maintenance of a fence between his premises and those of plaintiff. The provisions of the Code applicable to the question are as follows:

"Sec. 1496. When lands owned in severalty have been inclosed in common without a partition fence, and one of the owners is desirous to occupy his in severalty, and the other refuses or neglects to divide the line where the fence should be built or build a sufficient fence on his part of the line

when divided, the party desiring it may have the same divided and assigned by the fence viewers, who may, in writing, assign a reasonable time, having regard for the season of the year, for making the fence, and if either party neglect to comply with the decision of the viewers the other after making his own part may make the other part, and recover as directed above.

"Sec. 1497. In the case mentioned in the preceding section, when one of the owners desires to throw open any portion of his field not less than twenty feet in width, and leave it uninclosed to be used in common by the public, he shall first give the other party six months notice thereof.

"Sec. 1498. When land which has lain uninclosed is inclosed, the owner thereof shall pay for one-half of each partition fence between his lands and the adjoining lands, the value to be ascertained by the fence viewers, and, if he neglect for thirty days after notice and demand to pay the same, the other party may recover as before provided; or he may at his election rebuild and make half of the fence, and if he neglect so to do for two months after making such election he shall be liable as above provided.

"Sec. 1499. When a division of fence between the owners of improved lands may have been made, either by fence viewers or by agreement in writing, recorded in the office of the clerk of the township where the lands are, the owners and their heirs and assigns shall be bound thereby, and shall support them accordingly, but if any desire to lay his lands in common, and not improve them adjoining the fence divided as above, the proceedings shall be as directed in the case where lands owned in severalty have been inclosed in common without a partition fence."

Section 1497, it will be observed, refers to section 1496, and provides that in the case there mentioned a party may throw open any portion of his field not less than twenty feet in width, if he shall first give the other party six months notice thereof. The case mentioned in section 1496, to which section 1497 refers, is where lands owned in severalty have been inclosed in common without a partition fence. Section 1499

refers to a case where a division of the fence between the respective owners of adjoining land has been made, and each has been assigned his respective portion to maintain.   In such case any person desiring to lay his lands in common, and not improve them adjoining the fence so divided, may proceed as directed in section 1497, where lands owned in severalty have been inclosed in common without a partition fence.   But the statute makes no provision for a case where one party has inclosed his land, and afterward another party incloses the adjoining land, and no division of the fence separating the adjoining owners has been made between the respective owners of the premises, unless, indeed, section 1499 should by construction be held to apply to, and, in its spirit, to embrace such a case.

This omission, however, may very reasonably be accounted for upon the theory that one who merely incloses his premises adjoining another close, and does not own any part of the division fence, may, at pleasure, and without the aid of statute, throw his inclosure open to common, since the owner of the adjoining close is then left in as good condition as he was before; whilst if the adjoining premises are inclosed in common, or the division fence is jointly owned by the adjoining proprietors, the owner of the other premises should have time to construct the whole or a part of the fence upon the dividing line.   It cannot be supposed that the legislature intended to deny absolutely, to the person in the condition last named, the privilege of throwing open his inclosure to common, and at the same time to confer that privilege upon the owners of land in severalty inclosed in common, and upon the owners of land separated by a division fence respective portions of which are owned by the adjoining proprietors.

But, however that may be, let us consider whether the premises in question were, in fact, occupied in severalty.   The evidence shows that the hedge on the line between the premises never had been, and is not, a lawful fence, and that it would not turn stock.   It is not necessary that a fence between inclosures, in order to impress upon the premises the character of being occupied in severalty, should be a lawful

fence. But there can be no such occupation unless each proprietor is able to keep his stock upon his own premises. If animals turned upon the premises of one may, at will, pass upon the premises of the other, it is apparent that there can be no such thing as occupancy in severalty.

A row of hedge-plants six inches in height upon the line between premises otherwise inclosed in common would indicate an intention at some time to occupy in severalty. But, whilst the plants remained in this condition, no one would think of saying that the premises were separated by a partition fence, and that each owner was occupying his part in severalty. Both time and care are requisite that these tender plants may attain the character, and be entitled to the name of a partition. When, then, is this character assumed? Not, it seems to us, until they become sufficient to turn stock. We know nothing of the character and condition of this fence, except that it would not turn stock, and the fence viewers assessed it at $40, or fifty cents per rod. We think, inasmuch as this fence never attained sufficient perfection to prevent stock from passing from the premises of one owner to those of the other, that they could not have been occupying in severalty, but their lands were inclosed in common, without a partition fence, within the spirit of section 1496. It follows that, under section 1497, the defendant had a right, upon giving six months notice, to throw open a portion of his inclosure, not less than twenty feet in width.

The evidence shows that defendant gave notice of his intention to do this before the plaintiff served notice of the application to the fence viewers to divide and assess the value of the fence. Defendant, therefore, is not liable to contribute to the maintenance of a fence on the line between his premises and those of plaintiff

REVERSED.