H. BODDY v. B. F. HENRY AND L. W. CONOVER, Appellants.

**Action for Deceit:** SALE OF CORPORATION STOCK: *Misrepresentation of amount of corporate property.* Though a sale of the stock of a corporation is not, in strictness a sale of the property which the corporation owns, where its principal property is a ranch and false and fraudulent representations as to the amount of land contained in the ranch are made by one who sells his stock in the corporation, the seller is as liable in an action for deceit as though he had thus sold the ranch instead of the stock.

**PROOF OF SCIENTER.** False representations by a seller, who stands in no confidential relation to the buyer, will not base an action for deceit, though the seller had means of ascertaining the truth and had no reason to believe that the representations made by him were true. The action can be sustained only upon proof that representations made were false *and fraudulent* within the knowledge of the party making them.

*Same.* Evidence of the parties is admissible to show what they believed and relied on, since the issue involves the knowledge of falsity on part of the defendant and reliance on the statements by plaintiff.

*Same.* Defendants should have been allowed to testify as to the circumstances of their acquiring ownership of the stock, and their knowledge or want of knowledge of the business of the corporation, as bearing on their knowledge of the falsity of representations made.

*Same.* The defendants may testify as to the custody of certain documents showing the extent of the ranch, since they are not necessarily chargeable with information therein contained, if they do not know the contents thereof.

NOTICE  Where vendor and vendee stand on equal footing, and document which, in the hands of defendants, would charge them with kowledge of the amount of land owned by a corporation whose stock defendants are selling, would equally constitute notice to plaintiff of the same documents and put into the possession of plaintiff for the purpose of giving him information in regard to the quantity of such land.

Corporation and Stockholder: DUTY OF OFFICERS TO BUYER OF STOCK. Where stockholders sell their own stock and there is no sale of property owned by the corporation, it is immaterial, in an action brought against the stockholders because of false and fraudulent representations concerning the amount of property owned by the corporation, that they were officers of the corporation. The fact to be ascertained is whether they made such representations, knowing them to be false, and this fact does not depend upon the seller's official connection with the corporation.

*Of Agent of Corporation* That a person is an agent of the corporation, in charge of the property and authorized to sell it, does not render the stockholders liable for his false representations as to the amount of the corporate property, by which a third person is induced to buy their stock, but he must be shown to be the agent of the stockholders, or to have been referred to by them as possessing knowledge of the property.

MEASURE OF DAMAGES. The proper measure of damages for fraud in inducing a sale of corporate stock, having no market value in itself, by false representations as to the amount of the corporate property, is the difference between the value of the stock and its value if there had been the amount of property as represented.

*Testimony Upon.* Witnesses, on an issue of fraud in the sale of land, cannot testify as to the difference in value of the land actually sold and the amount as represented, but should state the two distinct valuations.

*Where buyer transfers stock.* Where the purchaser of corporate stock pays a full consideration therefor, but has portions of the stock transferred to members of his family, such transfer does not prevent the purchaser from recovering the full amount of damages resulting from misrepresentations as to the property.

Evidence: WHETHER DESCRIPTION EMBRACES ALL OF A RANCH. In an action for deceit grounded on misrepresentations as to the size of a ranch, witnesses may say whether the lands embraced in the ranch were all covered by the description in documents referred to.

WHETHER PART OF LAND HAS BEEN SOLD. Witnesses familiar with the business of a corporation may say whether it had sold portions of land which it had owned.

SECONDARY. Conclusions of the witnesses as to the number of acres of land belonging to the corporation, based on documentary evidence, are not admissible, since the documents are the best evidence.

*Appeal from Franklin District Court.*—Hon. J. R. Whitaker, Judge.

Friday, April 12, 1901.

Plaintiff sues to recover damages sustained by reason of false and fraudulent representations made by the defendants as to the quantity of land contained in a certain ranch in Texas, which ranch constituted the principal property of a stock company, the shares of which were transferred by defendants to plaintiff in exchange for lands of plaintiff in Iowa. There was a verdict of $5,000 for plaintiff, and from judgment rendered thereon defendants appeal.—*Reversed.*

*W. A. Powell, E. P. Andrews,* and *W. D. Evans* for appellants.

*Albrook & Lundy* for appellee.

McClain, J.—The defendants, being the president and secretary, respectively, of the Clay County Land & Cattle Company of Texas, and the owners of 2,450 shares out of the entire stock of the company, consisting of 2,500 shares, in March, 1897, advertised a Texas ranch for sale as a part of the property of the company. This advertisement came to the notice of plaintiff, who resided in Franklin county, Iowa, and owned a tract of land in that county of 1,760 acres, which he had listed with real estate agents at Burlington, Iowa, for sale. Plaintiff and his agents corresponded with defendants with reference to exchanging the Franklin county land for the Texas ranch, and subsequently had personal negotiations with them, which resulted in the transfer to plaintiff of defedants' stock in the corporation, and the conveyance by plaintiff to defendants of his Franklin county land. The defendants, at the time of the commencement of these negotiations, had only recently acquired any considerable interest in the Texas company, and become its officers, and neither of them had seen the Texas ranch. During the course of the negotiations the plaintiff and defendant Henry both visited the Texas ranch, the plaintiff on three different occasions. Defendants referred plaintiff to one Butcher, who was in charge of the ranch as agent for the company, and some of plaintiff's interviews with reference to the property were with him. The sole issue in the case is whether, in the course of these negotiations, false and fraudulent representations were made by defendants, or by said Butcher as their agent, on which plaintiff relied and had a right to rely, with reference to the amount of land included in the ranch. It may be said that there is no controversy as to the fact that he boundaries of the ranch were correctly referred to and pointed out, but the controversy is as to what was represented with reference to the area included, and whether such representations, if erroneous, were false and fraudulent; it being contended that defendants represented

the ranch as containing about 17,000 acres, whereas, in fact, its contents fell short of that quantity by more than 2,000 acres. Although defendants transferred to plaintiff their shares of stock in the company, and not directly the ranch itself, yet there is no question but that the principal capital and property of the corporation consisted of this ranch, and that the actual value of the stock depended to a large extent on the amount of land included in the ranch, so that any false and fraudulent representations as to its area would be so far material in the transaction as to render the defendants liable in the same way as though they had directly conveyed the ranch itself in exchange for plaintiff's land.

The foregoing are the facts necessary for an understanding of the questions of law involved in the case. The general legal proposition on which plaintiff's action rests is that false and fraudulent representation made, with knowledge of their falsity, by one person to another, and relied on by the latter to his injury, render the person making such representations liable to him in damages for the injury thus resulting. The necessary elements of this legal wrong, for which a court of law gives redress in an action for deceit, are: (1) False representations by defendant, upon which plaintiff had the right to rely; (2) knowledge of their falsity on the part of defendant; and (3) injury to plaintiff resulting from his reliance thereon.

The court instructed the jury that, in determining whether or not defendants knew that the representations alleged to have been made by them as to the quantity of land were false, the jury had the right to consider the fact that defendants were stockholders and officers of the company and had in their custody and control maps, abstracts, tax receipts, and other papers or books belonging to the company, and pertaining to said land, which contained information as to the acreage of the ranch, as well as personal knowledge on the part of defendants of the number of acres, and all means of said knowledge and all other facts and circumstances as may

have been shown by the evidence bearing on and pertaining to said knowledge; also that such officers would .be presumed to tave known that which it was their duty to know, and that, before making representations as to the amount of land, it was their duty to use reasonable diligence to know that the representations were true, and that they would be presumed to have used such diligence, and to possess the knowledge which its exercise would bring to them; also that, though defendants did not know the representations to be false, yet if they made them as true, and of their personal knowledge as to truth or falsity, and had the means at hand as such officers to know their truth or falsity, and had assumed such knowledge, then, under the law, they were presumed to have known such representations were false. In effect, the court thus authorized the jury to hold defendants liable without any proof of knowledge of falsity of these statements on the part of defendants, if, from the means of knowledge accessible to them, they might have known the statements to be false, even though, as a matter of fact, they believed them to be true. Unless defendants were chargeable with some duty to plaintiff by reason of their being officers of the company, this direction was plainly contrary to the rule long recognized by this court with reference to the necessity of proof of *scienter* in actions for deceit. The rule uniformly recognized by this court is that the plaintiff must show by competent testimony that the representations were false and fraudulent, within the knowledge of the party making them. It is not enough that they were made through mistake, ignorance, or carelessness, or without reason to believe that they were true. *Holmes v. Clark,* 10 Iowa, 423; *Courtney v. Carr,* 11 Iowa, 295; *Hallam v. Todhunter,* 24 Iowa, 166; *Avery v. Chapman,* 62 Iowa, 144; *Allison v. Jack,* 76 Iowa, 205; *Phelps v. James,* 79 Iowa, 262; *Sylvester v. Henrich,* 93 Iowa, 489.

There is an intimation in *McKown v. Furgason,* 45 Iowa, 636, that the representation of a matter as true of personal knowledge, of which the person making the representation had no knowledge whatever, is a false representation, and this qualification of .the rule is supported by authorities from other states. *Kountze v. Kennedy,* 147 N. Y. 124, (41 N. E. Rep. 414, 29 L. R. A. 360) ; *Cole v. Cassidy,* 138 Mass. 437; *Chatham Furnace Co. v. Moffat,* 147 Mass. 403 (18 N. E. Rep. 168) ; *Lobdell v. Baker,* 1 Metc. (Mass.) 193 ; *Cooper v. Schlessinger,* 111 U. S. 148 (4 Sup. Ct. Rep. 360, 28 L. Ed. 382) ; *Griswold v. Gebbie,* 126 Pa. St. 363 (17 Atl. Rep. 673) ; *Hexter v. Bast,* 125 Pa. St. 52, 72 (17 Atl. Rep. 252) ; *Rowell v. Chase,* 61 N. H. 135. moral obligation to inquire, he makes a    representation

But even this statement of the law would not help out the instructions which we are now considering. There are cases decided by other courts extending the rule of liability beyond that recognized in this state. See *Holcomb v. Noble,* 69 Mich. 396 (37 N. W. Rep. 497) ; *Totten v. Burhans,* 91 Mich. 495 (51 N. W. Rep. 1119) ; *Trimble v. Reid,* 97 Ky. 713 (31 S. W. Rep. 861) ; *Foard v. McComb,* 75 Ky. 723 ; *Foster v. Kennedy's Adm'r,* 38 Ala. 359. But these cases are wrong in principle. The question is not whether defendant has made representations which amount to an implied warranty, or whether the contract ought to be rescinded in equity, or whether the defendant has attempted to gain an unconscionable advantage; for these matters are subject of investigation and redress in different forms of action. *Stone v. Denny,* 4 Metc. (Mass.) 151; *Cameron v. Mount,* 86 Wis. 477 (56 N. W. Rep. 1094, 22 L. R. A. 512) ; *Smith v. Bricker,* 86 Iowa, 285 ; *Hunter v. Safety Cure Co.,* 96 Iowa, 573.

In the case of *Kountze v. Kennedy,* 147 N. Y. 129 (41 N. E. Rep. 414, 29 L. R. A. 363), it is said: "Misjudgment, however gross, or want of caution, however marked, is not fraud. Intentional fraud, as distinguished from a

mere breach of duty or the omission to use due care, is an essential factor in an action for deceit. The man who intentionally deceives another to his injury should be legally responsible for the consequences. But if, through inattention, want of judgment, reliance upon information which a wiser man might not credit, misconception of the facts or of his moral obligation to inquire, he makes a misrepresentattion designed to influence the conduct of another, and upon which the other acts to his prejudice, yet, if the representation was honestly made, believing it to be true, whatever other liability he may incur he cannot be made liable in an action for deceit. The law affords remedies for the consequences tracts or transactions based upon mistake or innocent mismay in many cases be avoided, and the equitable powers of courts are frequently interposed for the rescission of contracts or transactions based upon mistake or innocent misrepresentation. While the common-law action of deceit furnishes a remedy for fraud which ought to be preserved, we think it should be kept within its ancient limits, and should not by construction be extended to embrace dealings which, however unfortunate they may have proved to one of the parties, were not induced by actual intentional fraud on the part of the other. We have referred to a representation made without knowing whether it was true or false, and where the party making it was indifferent whether it was true or false, as sufficient to sustain the action if the representation was in fact untrue. The making of a representation to influence the conduct of the person to whom it is made carries with it an assurance, necessarily implied from the situation, of the belief of the party making it in the truth of the affirmation" In this action the sole question is that of deceit; that is, whether, by statements which are intentionally and morally wrong, defendant has deceived the plaintiff to his injury. *Pasley v. Freeman,* 2 Smith Lead. Cas. (8th ed.) 75; *Fisher v. Mellen,* 103 Mass. 503; *Nash v. Trust Co.,* 163 Mass. 574 (40 N. E. Rep. 1039, 28 L. R. A. 753);

*Iron Works v. Barber,* 106 Pa St. 125, 139; *Crowell v. Jackson,* 53 N. J. Law, 656 (23 Atl. Rep. 426); *Ball v. Lively,* 4 Dana, 369; Webb's Pollock, Torts, 355, 362.

To hold that defendant, in an action of deceit, is liable for false statements, the falsity of which he might have known by investigation, but which he in fact believed to be true, is to put a liability on one for what he says in good faith, under circumstances not making it his duty to make any statement whatever. The lack of uniformity in the rules on this question, recognized by courts which have departed from the old and established landmarks, is a warning that certainty in the law is only to be preserved by adhering to the requirement that the complaining party shall show knowledge of the falsity complained of. If liability in such cases is to be predicated on the question whether the party making the representation might have known of its falsity, then the greatest uncertainty must result as to how much opportunity for knowledge is necessary to render him liable, and there would be no definite rule possible without adopting the broad proposition that every statement made by one person to another with regard to a business transaction involves a warranty of its truthfulness, which is further than we feel justified in going, either on reason or authority.

It seems to us that the rule in this state has not been departed from or enlarged in *Hubbard v. Weare,* 79 Iowa, 678, but, on the contrary, is there fully recognized. That, however, was an equitable action, and therefore it was competent for the court to consider what evidence was sufficient, in its judgment, to show knowledge of the falsity of the statements relied upon. It is one thing to hold as a matter of fact that from certain evidence the court will find knowledge to have existed in a particular case, and, on the other hand, to charge the jury that such facts, as a matter of law, render the defendant liable, without a finding of knowledge as a fact. *Atkins v. Elwell,* 45 N. Y., 753.

The case of *Hubbard v. Weare, supra,* illustrates another difficulty with the instructions given by the court in this case. That was a case where plaintiff, having subscribed and paid for stock in a corporation of which defendant was president, brought action against defendant for damages on account of misrepresentations made as to the solvency and profits of the company, and the court held that there had been such misrepresentation and fraud on the part of defendant as to entitle plaintiff to recover.    This result was reached on the theory that the officers of a corporation owe a duty to those who subscribe for stock in the corporation, and are bound to know its financial condition, and to state with strict and scrupulous accuracy the existence of facts affecting the advantages, held out as inducements to take shares, and it is said: "Such officers will be presumed to have known that which it was their duty to know.  Before making representations as to the condition of the company as inducements to take stock therein or to extend credit thereto, it is their duty to use reasonable diligence to know that the representations are true, and they will be presumed to have used such diligence and to possess the knowledge which its exercise would bring them."    The lower court seems to have thought that defendant's relations to the company in the case now before us imposed upon them such duty as to diligence in dealing with plaintiff; for, in each of the instructions in which the liability of defendants for representations made by them is discussed, the court conditions the rule of liability which it states on a finding of the jury that the defendants were officers of the corporation.    This was plainly erroneous.    Plaintiff was not acquiring the stock of the corporation by subscription and purchase from the corporation itself, but was simply buying stock from stockholders of the corporation.    He was acquiring in the corporation the rights which defendants had as stockholders, and the officers of the company, as such, had nothing to do with the transaction.    They owed to him

no duties as officers with reference to diligence and disclosure. The simple question in the case is whether defendants, as holders of certain stock, in transferring it to plaintiff, knowingly made false and fraudulent representations with reference to the material matter affecting the value of the stock. It may be that if, as officers, they actually knew the representations to be false, they would be charged with such knowledge as individuals; but the duties and liabilities of officers towards subscribers to the stock, which are explained in *Hubbard v. Weare, supra,* did not rest upon and attach to defendants in ther dealings with plaintiff. The court erred in submitting to the jury the question whether defendants were officers of the corporation, for the purpose of finding a liability on the part of defendants which would not have existed had they not been such officers. The fact to be determined was whether the misrepresentations, if made, were known to be false, and that fact would not be dependent upon defendant's official connection with the company. *Crowell v. Jackson,* 53 N. J. Law, 656, (23 Atl. Rep., 426.)

A similar error was committed in submitting to the jury the question whether Butcher, who was manager of the ranch, was the agent of the corporation, as bearing on the liability of defendants for false statements made by him in connection with the transaction. If he was the agent of the defendants for the purpose of negotiating the sale of the stock, or if he was a person to whom the defendants referred the plaintiff for information, then, no doubt, false representations made by him with knowledge of their falsity, or representations which defendants supposed he would make, and which they knew would be false, although he might have made them in good faith, would furnish a basis for liability on the part of defendants; but the mere fact that he was the agent of the company in charge of the property, even though as agent of the company he had authority to sell its property, would not make him

the agent of the defendants in a transaction relating to the sale of this stock.

Some of the stock acquired by the plaintiff in this transaction was taken in the names of members of his family, and defendants complain that plaintiff was not entitled to recover damages for depreciation in the value of such shares, due to misrepresentations as to the quantity of land. But we do not concur in this view. The entire body of stock transferred by defendants was so transferred in consideration of the exchange of plaintiff's property, and his right to recover for any deficiency in the value of such stock due to misrepresentations would not be affected by the fact that some of the stock thus acquired by him was, by his directions, put into the hands of others.

Complaint is also made of instructions with reference to whether plaintiff was chargeable with knowledge as to the quantity of land which might have been derived from the maps, plats, and other papers put into his hands by defendants before the trade was consummated. Without discussing the particular language used in these instructions, it is sufficient to say that, so far as we can see, the plaintiff and the defendants were on an equal footing, and that any documents which in the possession of defendants would charge them with knowledge would equally, if put into the possession of plaintiff for the purpose of giving him information in regard to the quantity of land, constitute notice to him.

In estimating the measure of damage sustained by plaintiff by reason of any false representations made by defendants with knowledge of their falsity, we suggest that the proper rule would be to find out how much less the value of the stock was than it would have been if the representations had been true. This stock did not, as we understand it, have any market value in itself, and its value was dependent entirely upon the value of the corporate property which it represented.

Many assignments of error based on ruling relating to the introduction of evidence are argued. So far as they raise questions which may be important on a retrial of the case, we briefly dispose of them as follows: The court properly allowed witnesses to testify as to whether the lands embraced in the ranch were all covered by the description in documents referred to, inasmuch as the extent of the ranch was a matter of fact. It was also a matter of fact whether the company had sold certain portions of the lands which it had owned, and witnesses familiar with the business of the company might testify with reference thereto. Testimony of parties as to what they believed and intended and relied upon was admissible, for the issue involved knowledge of falsity on the part of defendants, and reliance on representations made on the part of the plaintiff. In such a case a mental condition as to belief or intent may be testified to by the person whose material condition is in question. Conclusions of witnesses as to the number of acres, based on documentary evidence, were not admissible, as the documents themselves would furnish the best evidence. Defendants should have been allowed to testify as to the circumstances of their acquiring ownership of the stock, and their knowledge or want of knowledge of the business of the company; for these facts would bear on their knowledge of the falsity of any representations made. For the same reason, defendants should have been allowed to testify with reference to the custody of the documents belonging to the company containing information as to the quantity of land. If they were not familiar with the contents of these documents, they are not necessarily charged with information that might have been obtained therefrom. It was not proper to allow witnesses to say how much less the ranch was worth containing the number of acres which it was found to really contain than if it had contained the number of acres which it was represented to

contain. It seems that the proper rule in such cases is to have the witness state the two distinct valuations, and let the jury ascertain the difference for themselves. *Richardson v. City of Webster City,* 111. Iowa, 427. It may be that such error in a case like this would be error without prejudice, but it is better to follow the method of inquiry pointed out in the case cited and the other cases in this court on that subject. Many other rulings as to the introduction of evidence are objected to, which, on investigation, we find to have been unobjectionable, or, at any rate, not prejudicial. In view of the necessity for a new trial, it is not proper for us to express any opinion as to whether the case should have been taken from the jury on defendants' motion.—REVERSED.