KATHERYN M. DAVIS and JOHN W. DAVIS, Appellants, v. CENTRAL LAND COMPANY, FRANCIS E. TRENT and JOHN G. TRENT.

**Fraud:** DAMAGES: PROOF. In a suit against agents for damages because of their misrepresentations concerning property sold by them, proof of knowledge of the falsity is essential to recovery.

**Same:** KNOWLEDGE: PLEADING: SUFFIENCY: NEW TRIAL. A petition alleging that defendants falsely and fraudulently represented that the property sold plaintiffs extended to an alley, impliedly charges knowledge of the falsity of the representations; and in the absence of any criticism of the pleading until after verdict, every legal intendment is to be admitted in its support, and a new trial should not be granted because of its insufficiency in that respect.

**Same:** FALSE REPRESENTATIONS: KNOWLEDGE: EVIDENCE. Where an agent was employed to sell a house and lot, and with no knowledge as to the boundary of the lot represented to the purchaser as of his own knowledge that it extended to the alley, thereby inducing the purchase, he was liable on the ground of fraud for the damage thus sustained; as the boundary of the lot was easily ascertainable and not a mere matter of opinion, and the representation was concerning a fact the truth or falsity of which it was his duty to know. Evidence held to sustain a finding that with no knowledge whatever as to the boundary of the property in question defendant represented that it extended to the alley, for the purpose of inducing plaintiff to purchase.

*Appeal from Polk District Court.*—HON. LAWRENCE DE GRAFF, Judge.

SATURDAY, NOVEMBER 22, 1913.

ACTION for deceit in the sale of property resulted in a verdict for plaintiff. From an order granting a new trial, the plaintiff appeals.—*Affirmed.*

*John L. Gillespie,* for appellants.

*C. D. Burkheimer,* for appellees.

LADD, J.—The misrepresentation alleged was that the property known as No. 1822 West Tenth street, in Des Moines, purchased by plaintiff, extended back to the alley, whereas it did not, but lacked thirty-five feet or more of doing so. The property was owned by Fletcher & Van Vliet and defendants were acting as their agents in finding a purchaser. A cash payment of $250 was exacted, and defendants loaned the plaintiffs this amount, which was paid by her on the contract. Upon discovering that the lot did not extend to the alley, plaintiffs notified defendants that they would rescind the contract, and requested the return of the note. It had been negotiated, and this action was brought for the amount thereof alleged as damages and the cost of moving household goods in and from the premises.

Had plaintiffs elected to rescind, the contract so advising Fletcher & Van Vliet, and brought an action for recovery of the payment made scienter might not have been material.

1. FRAUD: damages: proof.
But the action is against defendants as their agents, and fraud on the part of defendants must have been established to warrant the recovery of damages.

One of the grounds of the motion for new trial·was that the petition did allege knowledge of the falsity of the representations averred. It recited that plaintiffs informed defendants that they wished to purchase prop-

2. SAME: knowledge of fraud: pleading: sufficiency: new trial.
erty which abutted an alley, as they expected to keep a horse and buggy, that when the premises were being shown to them, by John G. Trent, one of defendants then asked if the lot extended to the alley, and that he "falsely and fraudulently stated, represented, and warranted that the premises extended from Tenth street back to the alley, running between Tenth and

Eleventh streets." This language is repeated in alleging that plaintiffs relied on the misrepresentations and were induced thereby to enter into a contract of purchase. Again, it was averred that, when moving in, plaintiffs "discovered that said statements, representations, and warranties made by said John G. Trent for and in behalf of the defendants relative to said premises were false, fraudulent, and untrue, and were made by the defendants for the purpose of deceiving and defrauding these plaintiffs and for the purpose of inducing them to enter into said contract." The petition was not assailed, and one of the questions to be determined is whether it sufficiently alleged knowledge of the falsity of the representation on the part of defendants.

As the petition was not criticised until after verdict, every legal intendment is to be admitted in its support. The allegations that the representations were false and fraudulent implies that defendants knew them to be false. In *Merwin v. Arbuckle*, 81 Ill. 501, it was said, in approving an instruction: "As the scienter enters into and is necessary to a fraudulent representation, the instruction virtually informed the jury that the representations must have been made, knowing them to be false: Then when they were informed that they must have been fraudulent, they were, in substance, told that they must have been not only false but plaintiff in error knew it." *Forsyth v. Vehmeyer*, 176 Ill. 359 (52 N. E. 55). *Bayard v. Malcolm*, 2 Johns. (N. Y.) 550 (3 Am. Dec. 450). In *Beebe v. Knapp*, 28 Mich. 56, the allegation was that defendant falsely and fraudulently represented a note to be good, and, of an objection that knowledge that it was not good was not alleged, the court, through Christiancy, J., said:

As to the want of a scienter, it is true the declaration does not, in so many words, allege that the defendant at the time 'well knew that the said note was not good and the maker irresponsible,' but it does allege that they 'falsely and fraudulently' represented the note to be good, and the maker

responsible. The term 'fraudulently,' in this connection, of itself implies knowledge of the falsehood of the representations, or sufficient knowledge, at least, to render them liable for the consequences of the fraud. See 1 Chitty's Pl. 157; 2 East, 446; 4 Bing. 73; Id. 66. At all events, this is at least an argumentative allegation of defendants' knowledge, and, not being demurred to, is cured by verdict. *Kean v. Mitchell*, 13 Mich. 207.

20 Cyc. 100. See, also, *Cowin v. Toole*, 31 Iowa, 513; *Langsdale v. Girton*, 51 Ind. 99; *Bank of Montreal v. Thayer* (C. C.) 7 Fed. 622. There was no such defect in the pleading as to exact the granting of a new trial.

II. Another ground of motion for a new trial was that the evidence was insufficient to warrant a finding that defendants had knowledge that the lot did not extend to the alley. Mrs. Davis testified that: "After we had looked through the house, we were standing in the kitchen when Mr. Davis asked Mr. Trent if the lot ran back to the alley, and he informed him that it did. Mr. Davis said the reason he wanted to know, in his business, he had goods to deliver, and he expected to have some kind of vehicle, a horse or a car." And Mr. Trent then said: "Well, you have plenty of room. There is a barn on the rear of the next lot to the south. This lot and the lot to the south on which there was a barn at the rear close to the alley were apparently the same length." The witness then described the ground between the house and the alley, and proceeded: "John Trent pointed to the alley, which was at the rear end of the lot. The alley pointed out by him had been used and teams had driven up and down that alley, and the result of driving along the alley could be seen. . . . Mr. Davis, Mrs. Darnell, and myself heard Mr. Trent make these statements about the lot running clear back to that alley, which alley was back of the other barn on the lot to the south." Mr. Davis testified: "I asked John Trent, in regard to this lot, whether it ran back to the alley or not, and I told him the reason why I wanted to know that,

3. SAME: false representations: knowledge: evidence.

that we expected later to remove our factory from Oskaloosa to Des Moines, and that I would have to have a place where I could have a barn so I could have some way of delivering my truck, my cigars, and he said there would be plenty of room there, and he pointed to the barn on the south. He said: 'You have got lots of room. There is a man there right on the lot next to you has got a barn. I do not see what there would be to hinder you from building a barn there.' I said, 'Well that looks all right because I would want to have a place where I could have a barn.' . . . If I remember right, I think we walked out to the alley or barn." Mrs. Darnell swore that: "John Trent showed us where the end of the lot went to the alley. It was perfectly smooth clear back to the alley. I could see nothing but smooth ground. John Trent told them they could have plenty of room to build a barn, that the folks down on the other lot had a barn on their lot, and that Davis could build a barn on their lot, too." On the other hand, Trent testified that he told plaintiffs in showing the lot that he "thought the lot went to the alley, but would have to find out from Van Vliet"; that he "did think the lot went to the alley"; that he did not know where the boundaries were; that Davis talked about building a barn; that he next met them at defendants' office, when Mr. Van Vliet was called; that they then inquired about the size of the lot; and that he told them they would have to find out of Van Vliet." The latter testified that he told "the Davises that the lot was smaller than a full lot and would not be as big a lot as they would expect in smaller towns; that he read the description to them and told them there was an easement over the right of way back of the house which would give them access to the alley."

From this testimony, the jury might have found that Trent had no knowledge whatever as to the boundaries of the premises, that, to induce plaintiffs to buy the same, he represented that the property extended to the alley, and the precise question is whether therefrom the jury might have found that his representations were fraudulent.

VOL. 162 IA.—18

The size of the lot was a matter of definite knowledge and readily ascertainable as distinguished from mere matter of opinion and judgment which might vary, and the assertion that it extended to the alley, if made, carried with it the implied assurance that Trent knew this to be a fact. If the Davises are to be believed, he was asked if the lot extended back to the alley and the reason for wanting to know explained, and Trent in answering must have intended to have given them to understand that he knew the boundary and that it was as he stated. He was showing the lot for the purpose of selling it to them and, in doing so, they quite naturally would assume that he knew its location. The jury then might have found that Trent did not know whether the premises extended to the alley or not, and yet asserted as of his own knowledge that they abutted thereon, and, if so, and plaintiffs were induced thereby to enter into the contract of purchase to their damage, a verdict must have been returned for the plaintiff. True it is that in *Boddy v. Henry*, 113 Iowa, 462, it was said that: "The rule uniformly recognized by this court is that the plaintiff must show by competent testimony that the representations were false and fraudulent, within the knowledge of the party making them. It is not enough that they were made through mistake, ignorance, or carelessness, or without reason to believe that they were true." Such undoubtedly is the rule in cases where the representation necessarily is more or less a matter of opinion or deduction from other facts as appear from the decisions cited in support of the statement. That the writer of the opinion had this in mind is manifest from his reference to *McKown v. Ferguson*, 47 Iowa, 636, and the statement with approval of the rule "that representations of a matter as true as of personal knowledge of which the person making the representation had no knowledge whatever is a false representation," citing authorities in support thereof. The point considered in *Boddy v. Henry* was that it was not sufficient, in lieu of knowledge of the falsity of the representations, that defendant could

have known by the exercise of reasonable diligence, and there was no purpose to ignore the well-established doctrine that scienter may be proved by showing (1) actual knowledge of the falsity of the representation; (2) that the statement was made as of the knowledge of the party or in such absolute unqualified and positive terms as to imply his personal knowledge of the fact when in truth he had no knowledge whether the statement was true or false; or (3) that the party's special situation or means of knowledge were such as to make it his duty to know as to the truth or falsity of the representation. Smith on Fraud, section 15; Cooley on Torts (3d Ed.) 955.

The first and third of these are illustrated by *Boddy v. Henry, supra,* and *Warfield v. Clark,* 118 Iowa, 69, and the second by *McKown v. Ferguson,* 47 Iowa, 636, and *Riley v. Bell,* 120 Iowa, 618. In the former it was said that: "False representations as to the solvency or pecuniary condition of another, to be actionable as fraudulent, must at the time be known to have been false by the party making them, or he must have assumed or intended to convey the impression that he had actual knowledge of their truth, though conscious that he had no such knowledge." In the latter, the misrepresentation was with respect to the title of land, the defendant being alleged to have stated that he had looked at the record and it was clear, whereas a mortgage existed thereon, and the court said:

Where the wrong complained of is that the defendant has induced the plaintiff to act by falsely and fraudulently representing that a certain material fact is true, within his knowledge, and injury and damage result therefrom, both reason and authority unite in dictating the wholesome doctrine that he shall not be heard thereafter to assert that in fact he had no knowledge upon the subject concerning which the representation was made by him. . . . In such case the person making the representation at least knows that his statement of personal knowledge is false, and therefrom an intentional fraud is easily to be presumed.

In the English case of *Derry v. Peek,* 14 Appeal Cases,
337, followed by *Boddy v. Henry,* Lord Herschell, after re-
viewing previous decisions, concludes that the authorities
establish the following propositions:

First, in order to sustain an action of deceit, there must
be proof of fraud, and nothing short of that will suffice.
Secondly, fraud is proved when it is shown that a false rep-
resentation has been made (1) knowingly or (2) without
belief in its truth, or (3) recklessly, careless whether it be
true or false. Although I have treated the second and third
as distinct cases, I think the third is but an instance of the
second, for one who makes a statement under such circum-
stances can have no real belief in the truth of what he states.
To prevent a false statement being fraudulent, there must, I
think, always be an honest belief in its truth. And this prob-
ably covers the whole ground, for one who knowingly alleges
that which is false has obviously no such honest belief.
Thirdly, if fraud be proved, the motive of the person guilty
of it is immaterial. It matters not that there was no inten-
tion to cheat or injure the person to whom the statement
was made. I think these propositions embrace all that can
be supported by decided cases from the time of *Pasley v.
Freeman* down to *Western Bank of Scotland v. Addie* in 1867,
when the first suggestion is to be found that belief in the
truth of what he has stated will not suffice to absolve the
defendant if his belief be based on reasonable grounds.

It will be noted that the second proposition, as we have
stated it, i. e., that defendant made the statement as of his
own knowledge, when in fact he had no knowledge whether
it was true or false, corresponds with the reckless and care-
less statement under the English rule. A lucid discussion of
what is essential to establish scienter is to be found in *Wheeler
v. Baars,* 33 Fla. 696 (15 South. 584), where, after stating
the three propositions substantially as we have, the court
says:

If the first phase of the scienter is relied upon for a
recovery, the plaintiff must show that the representation was

made with actual knowledge of its falsity, unless it can be a case where defendant, in making the representation that was false, couches it in such positive and unqualified terms as to amount to an affirmation of his knowledge of its truth. The second phase of the scienter includes all those cases where the misleading and false statement has been made in such absolute, unqualified, and positive terms as implies knowledge on the part of the person making it, and, if the party making such positive statement has no knowledge whether it is true or false, he has knowingly told what is untrue, in putting his statement in such form as to amount to an assertion that he has knowledge of its truth, when in fact he has not. When one party seeks information of another upon a material matter upon which he is about to act, and the party from whom the information is sought is ignorant and has no information on the subject, the demands of truth would require him to disclose and affirm such ignorance; but, in such case, if he conceals or withholds his ignorance and positively asserts thus or so to be true, when in fact he knows not whether it be true or false, he is as culpable a deceiver, if his statement proves to be false, as the party who willfully asserts that to be true that he absolutely knows to be false. The third phase of the scienter embraces those cases where, from the party's special situation or means of knowledge, it becomes his duty to know as to the truth or falsity of the representation made; and in cases of this kind the plaintiff can generally satisfy the rule in regard to proof of the scienter by showing that the situation of the defendant was such as to possess him with special means of knowledge as to the truth or falsity of his assertions.

See, also, *Watson v. Jones,* 41 Fla. 241 (25 South. 678), where it is said:

The charge of fraudulent intent in actions for deceit may be maintained by proof of a statement made as of a party's own knowledge which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge, in which case it is deemed that the fraud consists in stating that the party knows the thing to exist when he does not know it to exist, and in such cases a belief in its existence will not warrant or excuse a statement of actual knowledge.

In *Bullitt v. Farrar,* 42 Minn., 8 (43 N. W. 566, 6 L. R. A. 149, 18 Am. St. Rep. 485), the representation was as to the grade of a lot, the question being whether there was error in refusing an instruction impliedly requiring an express asser- tion of knowledge of the fact represented, and the court in approving of its refusal said:

It might have been understood as prohibiting a recovery unless it appeared that defendant had unqualifiedly declared himself possessed of knowledge—had asserted in so many words that he knew his statements to be the truth. Positive assertions of knowledge are not required. If a man makes an untrue representation of a material fact as of his own knowledge, not knowing whether it be true or false, it is a fraud. The falsehood is intentional. And an unqualified affirmation amounts to an affirmation as of one's own knowledge. *Stone v. Denny,* 4 Metc. (Mass.) 151; *Wilder v. De Cou,* 18 Minn. 470 (Gil. 421). The fraud is as great as if the party knew his statement to be untrue. It is, in law, a willful falsehood for a man to assert, as of his own knowledge, a matter of which he has no knowledge. Kerr on Fraud & Mistake, 54. A charge of fraudulent intent in an action for deceit may be maintained by proof of a statement, made as of the party's own knowledge, which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge; and in such case it is not necessary to make proof of an actual intent to deceive. *Chatham Furnace Co. v. Moffatt,* 147 Mass. 403 (18 N. E. 168, 9 Am. St. Rep. 727) and cases cited. If the false representations are made as of one's own knowledge, or unqualifiedly, being such as might and did mislead, they are unjustifiable and fraudulent. *Merriam v. Pine City Lumber Co.,* 23 Minn. 314.

The cases are collected in a note to *Cottril v. Krum,* 18 Am. St. Rep. 549 (100 Mo. 397, 13 S. W. 753) on page 560, where the learned annotater deduces the rule that:

One who makes a representation without knowing whether it is true or false is, in morals and in law, as blamable as if he made it knowing it to be false. If therefore a

party states as of his own knowledge material facts susceptible of knowledge, which are false, he is guilty of a fraud which renders him liable to the person who relies and acts upon his representations as true, and it is no defense that he believed the representations to be true.

See Smith on Fraud, sections 41, 53.
Cooley on Torts, 953:

An unqualified statement that a fact exists, made for the purpose of inducing another to act upon it, implies that the person who makes it knows it to exist and speaks from his own knowledge. If the fact does not exist, and the defendant states of his own knowledge that it does, and induces another to act upon his statement, the law will impute to him a fraudulent purpose. The fraud here consists in the reckless assertion that it is true of which the party knows nothing, and in deceiving the other party thereby.

*Hamlin v. Abell*, 120 Mo. 188, 203 (25 S. W. 516); *Kirkpatrick v. Reeves*, 121 Ind. 280 (22 N. E. 139). These authorities leave no doubt but that the law is as we have stated it.

The fraud alleged consisted in the reckless assertion as true that of which the party knew nothing which was definitely ascertainable and in deceiving the other party thereby. The principle is well established by the authorities, and the evidence was such as to carry the issue of fraud to the jury. Had the only grounds for new trial been the alleged defect in the petition and insufficiency of the evidence, we must have concluded that the ruling was erroneous; but there were eighteen grounds in all, and the record does not disclose whether others may not have influenced the action of the court. Counsel for appellant conceded in oral argument that his honor declined to specify the above grounds as those on which the ruling was based, and from this it is to be inferred that others may have been controlling. The case is close on the facts, and we are not inclined to interfere with

the exercise of the large discretion trial courts necessarily exercise in ruling on applications for new trials.—*Affirmed.*

WEAVER, C. J., and EVANS and PRESTON, JJ., concur.