HERMAN TOTT, Appellant, v. MILTON V. DUGGAN, Appellee.

**FRAUD: Acts Constituting.—When Scienter and Fraudulent Purpose**
1  **Implied.** *Scienter* and fraudulent purpose are constructively supplied by the law in those cases where a person, for the purpose of inducing the execution of a contract, asserts a certain fact to exist as of his personal knowledge when in truth the fact does not exist. Principle applied in a case where the owner of real property assumed—but incorrectly—to point out to a purchaser the boundary lines of the property which he was seeking to sell.

**VENDOR AND PURCHASER: Remedy of Purchaser—Right to Insist**
2  **on Affirmance.** A vendor who has fraudulently induced a contract of sale may not *compel* the purchaser to accept rescission as a remedy.

Headnote 1:  27 C. J. pp. 68, 92.  Headnote 2:  27 C. J. p. 18; 39 Cyc. p. 1997.

*Appeal from Woodbury District Court.*—MILES W. NEWBY, Judge.

OCTOBER 24, 1924.

REHEARING DENIED JANUARY 16, 1925.

ACTION to recover on account of fraudulent representations of the vendor as to the extent and boundary of real estate, with a cross-petition asking rescission. By agreement of the parties, both issues were tried in equity. The petition was dismissed, and the prayer of the cross-petition granted. Plaintiff appeals.—*Reversed.*

*E. M. Corbett* and *Edwin J. Stason,* for appellant.

*Griffin, Griffin & Griffin* and *Kass Bros.,* for appellee.

Vermilion, J.—The appellee sold to appellant certain real estate in Sioux City, described as Lot 9 and the south 10 feet of Lot 10 in a designated block, at an agreed price of $43,000.

1. Fraud: acts constituting: when *scienter* and fraudulent purpose implied.

Appellant paid therefor by conveying to appellee land in South Dakota, at an agreed valuation of $16,000, assuming a first mortgage of $15,000 on the Sioux City property, and paying $12,000 in cash. Appellee held the title to the Sioux City property, and conveyed to appellant by quitclaim deed, and also procured to be issued to appellant a sheriff's deed therefor, under a sale at execution upon the foreclosure of a second mortgage. It is undisputed that appellant understood that a two-story brick flat building and a frame residence stood upon the ground he was buying. After he went into possession of the property, it was discovered that the north wall of the residence extends some 8 to 10 inches north of the north line of the south 10 feet of Lot 10, and that a cistern and concrete walk appurtenant to the residence are wholly north of that line. The flat building extends north of that line over 6 feet at one end and over 9 feet at the other, the difference being occasioned by a projecting chimney. A concrete platform 8 feet wide lies north of and next to the flat building. There is a cistern beneath this, and one or more openings for putting coal into the basement of the flat. 6 feet north of the concrete platform stands a garage 18 feet wide and extending 4½ feet north of the north line of Lot 10 and onto Lot 11, adjoining. The long way of the lots is east and west; they are 47.15 feet wide and something over 150 feet long; and the tract here involved is bounded on the south by Indiana Avenue, on the west by South Paxton Street, and on the east by an alley. Morningside Avenue, running northwest, cuts off the southwest corner of Lot 10. The residence and apartment building front to the south, the former being near the center of the lots east and west, and the latter next the alley.

Appellant brought this action at law for damages, alleging that appellee represented that all of the buildings described, in-

cluding the garage, were on the ground he was proposing to sell to appellant; that such representation was false, and known to appellee to be false at the time; and that, relying thereon, appellant bought and paid for the property. The appellee, in answer, admitted the sale of the premises, alleged that, at the time, he understood and believed that the residence and the apartment building were entirely on the premises conveyed, and denied the other allegations of the petition. By cross-petition he alleged that there was a mutual mistake as to the north boundary of the tract conveyed, pleaded an offer on his part to rescind, and prayed for a decree rescinding the sale. He moved to transfer the issue arising on the cross-petition to equity, and by consent of both parties both the law and equitable issues were tried as one action, triable in equity. The lower court found for the appellee, dismissed the petition, decreed a rescission, and continued the case for an accounting between the parties.

The appellant had listed his South Dakota property for sale with W. R. Chalman, a real estate broker of Sioux City, and appellee's property was listed with H. R. Dealy for a like purpose. Through these agents the parties were brought together. As has been said, it is not disputed that appellant understood that the residence and apartment building stood on the ground he was buying. He claims that it was also represented to him that the garage stood upon the tract conveyed to him; but this is in dispute. The controlling question of fact is whether his belief was induced by fraudulent representations made by appellee or his agent, Dealy, to the effect that these buildings were on the ground sold, and as to the location of the north line of the described tract.

It is not disputed that, before appellant inspected or bought the property, appellee showed him a photograph of the premises it was proposed to sell, showing the apartment building, the residence, and a part of the garage. Appellant, Dealy, and Chalman all testified that, on visiting the premises together, before the purchase was made, Dealy showed appellant the apartment building and the residence, and observed him inspecting the garage, and pointed out to him a mark or depression in the ground northwest of the residence, as being about on the north line of the ground it was proposed to sell him. This testimony

is not disputed. Dealy further testified that appellee had pre-
viously pointed out that spot to him as being about on the line,
and had subsequently admitted that he had done so. Appellee
denied that he had told Dealy that the spot was about on the
line. This spot or depression in the ground—apparently where
a gas pipe had been laid, and spoken of in the record as the
"gas line"—was 27 feet north of the north line of the south 10
feet of Lot 10; and a line extended east from that point would
lie to the north of the residence and the apartment building, but
would strike the garage some 3 or 4 feet from the south side.
The witnesses testified that the situation was confusing, owing
to the fact that Morningside Avenue intersected the other
streets at an angle, and cut off a corner of Lot 9. Chalman tes-
tified that, in the first conversation, appellee called attention to
the garage, saying, "It is a double garage on there;" and that
thereupon it was decided to go and look at the property. Dealy
testified that he did not think he told appellant that the garage
was on the ground he was offering, but that that was the way
he had it figured in his own mind. Appellee testified that he
told appellant the garage was not included; and that he knew
it was not on the ground he was selling.

It is clearly established that both appellee and Dealy, his
agent, represented that the apartment building and the resi-
dence were wholly on the ground conveyed. As to the garage,
while the record is not so convincing, we think it is fairly estab-
lished that it was also represented as being included in the pro-
posed sale.

It is urged on behalf of appellee that there is no evidence
that he knew that such representations were false, and that,
therefore, if made, as claimed, they would not be fraudulent;
that there was but a mutual mistake as to the boundary of the
tract; and that his offer to rescind afforded all the relief to
which appellant was entitled. This was the view taken by the
lower court. Reliance is placed on the case of *Boddy v. Henry*,
113 Iowa 462, and other cases, as holding that proof of *scienter*,
or a knowledge of the falsity of the representations relied on
as the basis for an action at law for deceit, is essential. The
*Boddy* case, and the rule announced there and in the other cases
cited by counsel, have been often considered by this court in sub-

sequent decisions. It is unnecessary to add to the discussion, further than to point out that the rule, as broadly stated there, and as claimed by appellee, has not been followed in later decisions.

*Selby v. Matson,* 137 Iowa 97, was a case involving a false representation as to the location of plaintiff's land. After the citing of the *Boddy* case, it was said:

"Plaintiff is presumed to have known the location of his land, and the jury might well have been so informed."

In *Riley v. Bell,* 120 Iowa 618, where one asserted his knowledge of the fact stated by him, and relied on as a false representation, it was held, after a citing of the *Boddy* case, that, where "a defendant has induced the plaintiff to act by falsely and fraudulently representing that a certain material fact is true, within his personal knowledge, and injury and damage result therefrom, both reason and authority unite in dictating the wholesome doctrine that he shall not be heard thereafter to assert that in fact he had no knowledge upon the subject concerning which the representation was made by him."

In *John Gund Brew. Co. v. Peterson,* 130 Iowa 301, although it did not appear that there was any affirmative assertion of knowledge on the part of the one making the representation, it was said that, where one falsely asserts a material fact to be true as of his own knowledge, he cannot, after injury results, say that he had no knowledge.

In *Smith v. Packard & Co.,* 152 Iowa 1, this language was used:

"It was not necessary for the plaintiff to prove that Steinhauser knew the true boundary; it was sufficient if he proved that Steinhauser *professed* to know, and so professing, pointed out to plaintiff an alleged boundary, with intent to deceive."

In *Davis v. Central Land Co.,* 162 Iowa 269, the rule announced in the *Boddy* case was said to be undoubtedly correct in cases where the representation was more or less a matter of opinion or deduction from other facts, but that it was manifest that the writer of the opinion had also in mind the rule cited with approval from *McKown v. Furgason,* 47 Iowa 636, "that the representation of a matter as true as of personal knowledge of which the person making the representation had no knowl-

edge whatever is a false representation." And, after an extensive review of authorities, it was further said that it was well established doctrine that *scienter* might be proved by showing (1) actual knowledge of the falsity of the representation; (2) that the statement was made as, of the knowledge of the party, or in such absolute, unqualified, and positive terms as to imply his personal knowledge of the fact, when in truth he had no knowledge whether the statement was true or false; or (3) that the party's special situation or means of knowledge were such as to make it his duty to know as to the truth or falsity of the representation.

The doctrine so announced has been repeatedly and consistently reaffirmed in numerous later cases. *Haigh v. White Way Laundry Co.,* 164 Iowa 143; *Richards & Comstock v. Fredrickson,* 171 Iowa 669; *Hess v. McCardell,* 182 Iowa 1121; *Ulch v. Wessel,* 184 Iowa 134, 138; *Davis v. Walker,* 191 Iowa 1268.

The record, moreover, is not wanting in evidence that appellee had actual knowledge that the garage, at least, was not on the ground sold. The facts do not present a case of mutual mistake, but rather, a case where one is induced to purchase real estate by representations of the vendor and his agent as to the extent of the property and the location of its boundaries, which the vendor knew, or must be conclusively presumed to have known, were false. That there may be a recovery of damages in such a situation cannot be questioned. *Selby v. Matson,* supra; *Davis v. Central Land Co.,* supra; *Richards & Comstock v. Fredrickson,* supra; *Smith v. Packard & Co.,* supra.

The election of remedies, where one has been induced by false and fraudulent representations to purchase real estate, as between a rescission on the one hand and the retention of the

**2. VENDOR AND PURCHASER:** *remedy of purchaser: right to insist on affirmance.* property and recovery of damages on the other, lies with the party who has suffered the injury. *Coe v. Lindley,* 32 Iowa 437; *Wicks v. German Loan & Inv. Co.,* 150 Iowa 112; *Shuttlefield v. Neil,* 163 Iowa 470; *Secor v. Siver,* 165 Iowa 673.

The decree permitting appellee to rescind, notwithstanding his fraud and appellant's election to retain the property and sue for damages, cannot be sustained.

While appellant's action for damages is necessarily and

essentially at law, and we have so treated it, in considering what proof was required to sustain it, it was, by agreement of the parties, tried as in equity. It is triable here *de novo* on the record made, and we are required to render final judgment. That the property, without the garage, and with the wall of the residence and over six feet of the apartment building over the boundary line, is worth much less than it would be, if all the buildings and the appurtenances that would in that event be included, were on the ground conveyed, is apparent. Two witnesses testified on the subject. Chalman testified that the property, with sufficient ground to go with the improvements, would be worth $35,000 to $40,000, and that, with the north line as it is, it would not be worth over $20,000. He described the situation as requiring the moving of the residence and the shortening of the apartments, including the changing of the stairway and heating plant, with a resultant lowering of rental value. Dealy testified, in substance, that the difference in value of the property would be from $8,000 to $10,000. One witness for defendant testified that the reasonable value of Lots 10 and 11 was $1,500 to $2,000 each. We understand that this refers to the land without improvements, and infer that the purpose of it was to show the value of the ground outside of that purchased by appellant, upon which the improvements stand, on the theory that its acquisition by appellant would make him whole. It is not shown what, if any, other improvements are on these lots. Obviously, such a solution of the difficulty was not one which appellant was bound to accept, nor the remedy one which he could enforce. He is entitled to the benefit of his contract as the property was represented to him.

Upon the whole record, we conclude that a judgment for $8,000 will accomplish this result. Appellant may take judgment in this or the lower court, at his election, for that amount; and the decree below is—*Reversed.*

ARTHUR, C. J., and STEVENS and DE GRAFF, JJ., concur.