HARTLEY STATE BANK, Appellant, v. R. R. McCORKELL.

**Replevin: Election to Take Money Judgment: Effect on Damages.** One who elects to take a money judgment may recover the value of the use of the property while detained, and not merely interest on the value of the property.

**Principal and Agent.** Acceptance of a new mortgage by an agent with agreement to release the old one, binds a principal who takes and forecloses the new mortgage.

**Practice: Evidence.** The court may admit testimony tending to explain why a writing was made, after both parties rest.

**Same: Withdrawal by Instruction.** Where it is charged that a judgment in foreclosure governs as to amount due on a mortgage, evidence of payments made is thereby taken from the jury.

*Appeal from Woodbury District Court.*—HON. A. VAN
WAGENEN, Judge.

SATURDAY, OCTOBER 6, 1894.

JUNE 21, 1890, plaintiff commenced this action to
recover possession, as absolute owner thereof, of a
certain stallion known as "Chere," purchased by de-
fendant October 21, 1887, from L. M. Hartley, of the
alleged value of five hundred dollars. Plaintiff alleges
that its ownership and right to the possession of said
horse was acquired by the purchase of a mortgage on
said horse, given by defendant to L. M. Hartley,
together with the notes secured thereby. Defendant
answered, admitting the execution of the notes and
mortgage, and alleging that about August 6, 1888,
before plaintiff became the owner thereof, said L. M.
Hartley, through his authorized agent, for a valuable
consideration, executed and delivered to defendant a
complete release and discharge of said mortgage, and
that subsequently said L. M. Hartley ratified said acts
of C. E. Hartley. Defendant further alleges that,
prior to the time plaintiff took possession of said horse
under replevin, the notes secured by said mortgage
had been fully paid, and that the horse was of the
value of eighteen hundred dollars when taken from
defendant. Defendant asks judgment for the return
of the horse, or for his value if not found, and for
costs. Plaintiff, in reply, denies that C. E. Hartley
had any authority to release said mortgage, or that
his acts were ever ratified by L. M. Hartley, and
denies that said alleged release was before plaintiff
became the owner of said note and mortgage. Upon
these issues the case was tried to a jury, and a verdict
returned finding that the defendant was entitled to the
possession of the horse at the time he was taken under
the writ herein; that he was then of the value of
twelve hundred and twenty-five dollars; and that

defendant is entitled to eight hundred dollars for the wrongful detention of the horse. Plaintiff's motion for a new trial being overruled, and defendant electing to take the value of the horse as found, judgment was entered against the plaintiff for nineteen hundred and twenty-five dollars. Plaintiff appeals.—*Affirmed*.

*Sawyer & Taft* for appellant.

*Lewis & Holmes* for appellee.

GIVEN, J.—I. In the fall of 1887, L. M. Hartley, through C. E. Hartley, sold the horse Chere to defendant, and, in payment, took his three notes for six hundred dollars each, dated October 21, 1887, payable June 1, 1889, 1890, and 1891, respectively, secured by a mortgage on said horse. On August 6, 1888, defendant, at the instance of C. E. Hartley, gave to L. M. Hartley a mortgage on certain real estate to secure said three notes and one other note for two hundred and seventy-four dollars. At the same time, C. E. Hartley gave defendant a writing as follows, identified as exhibit 1:

"August 6, 1888.
"*Bank of Akron, Plymouth Co., Iowa*.
"Received of R. R. McCorkell a new mortgage, dated August 6, 1888, which is to take the place of one mortgage dated October 21, 1887, which will be released as soon as last mortgage can be recorded. By order of R. R. McCorkell.
"(Signed)    C. E. HARTLEY,
"L. M. HARTLEY."

On October 24, 1888, a writing as follows was executed, identified as exhibit B:

"AKRON, IOWA, Oct. 24, 1888.
"It is hereby agreed between C. E. Hartley and L. M. Hartley, parties of the first part, and R. R.

McCorkell, party of the second part, that the said party of the first part is now holding a mortgage of the southeast quarter of section 13—93—48, Plymouth county, Iowa, also a chattel mortgage on one black stallion, Chere, number 2,209, and his books and accounts, to secure four promissory notes given by the said R. R. McCorkell. Now the said L. M. Hartley and C. E. Hartley hereby agree to cancel the chattel mortgage at the option of R. R. McCorkell, after six months, provided that the said R. R. McCorkell shall make them safe on other personal property. The notes amount to two thousand, one hundred and seventy-four dollars. It is further agreed that the horse may be removed from the county at any time the said R. R. McCorkell may wish.

"C. E. HARTLEY,
"L. M. HARTLEY,
"Per C. E. H.            R. R. McCORKELL."

The four notes and the two mortgages were assigned to the plaintiff, to secure a loan of eighteen hundred dollars, made to L. M. Hartley; and, while so holding them, this action was commenced, and also a suit in equity to foreclose the real estate mortgage. Judgment was entered foreclosing the real estate mortgage, the land was sold, and the proceeds applied, leaving a balance of two hundred and eight dollars and ten cents unpaid. The foregoing facts appear without question.

It is not questioned but that the plaintiff was entitled to possession of the horse, by virtue of the chattel mortgage, at the commencement of this action, if said mortgage was then in force. Defendant's contention is that the real estate mortgage was given in lieu of the chattel mortgage, and that the writing, exhibit 1, was given as a cancellation of the chattel mortgage. Plaintiff contends that said writing exhibit 1 is not a cancellation, but an agreement to cancel,

and that, by the writing exhibit B, said agreement was set aside, and the chattel mortgage reinstated. Plaintiff also claims that it is not shown that C. E. Hartley had authority from L. M. Hartley or the plaintiff to execute said writing exhibit 1, or that said act was ever ratified by either of them. The defense of payment was withdrawn from the jury, as will be seen hereafter, thereby leaving only the questions whether the chattel mortgage had been canceled, the value of the horse, and the amount of damages.

II. Evidence was introduced tending to show payments made on the mortgage debt prior to the rendering of judgment in the foreclosure case. Plaintiff contends that the amount of the indebtedness was adjudicated in that action, and that the court erred in overruling its motion to strike said evidence. The record in the former case was in evidence, and the court, having instructed to the effect that, if the debt was fully paid before the commencement of this action plaintiff could not recover, further instructed as follows: "If you find from the evidence in this case that the question involving the amount due upon the notes secured by said chattel mortgage has heretofore been adjudicated by a court of competent jurisdiction, and the amount of said indebtedness established by judgment of said court, then that adjudication is final, and all evidence bearing upon the question aside from the record of the adjudication should not be given weight by the jury." The effect of this instruction was, under the undisputed record in the former case, to withdraw the defense of payment and the evidence in support of it, and to leave the judgment in that case conclusive as to the fact and the amount of the indebtedness. Whatever prejudicial error there may have been in admitting evidence of payments and in overruling plaintiff's motion was cured by the instruction.

III. Plaintiff objected to the introduction of exhibit 1 in evidence, on the ground that there was no proof that C. E. Hartley had authority to execute it. Objection was overruled, and the jury were instructed to the effect that if they found that C. E. Hartley was authorized by L. M. Hartley to accept the real estate mortgage, and, in consideration therefor, agreed to release the chattel mortgage, and did so, or if they found that L. M. Hartley or the plaintiff ratified said act, the plaintiff could not recover, unless the chattel mortgage was revived by exhibit B. There was no error in overruling the objection or in the instruction. There was evidence tending to show the alleged authority in C. E. Hartley, and it appears beyond question that both L. M. Hartley and the plaintiff ratified the act of C. E. Hartley in taking the real estate mortgage, by accepting it and proceeding upon it. In doing so, they became bound by the agreement under which C. E. Hartley procured it.

IV. Plaintiff complains that, after both parties had rested, the defendant was permitted to testify, over objections, in substance as follows: That C. E. Hartley represented to him that a party who held a disputed claim against defendant intended to attach the horse Chere and that defendant executed exhibit B, upon C. E. Hartley's suggestion, to prevent the attachment of the horse, and upon C. E. Hartley's promise that he would surrender the writing to defendant whenever he wanted it. It was discretionary with the court whether to admit further evidence at the time this was admitted, and there was no abuse of that discretion. The writing exhibit B, in so far as it assumes to recite the facts, is manifestly incorrect. It is not true that C. E. and L. M. Hartley were then holding mortgages as stated, as the mortgages were to L. M. Hartley alone. If plaintiff then held the mortgages as alleged, it is not true that L. M. Hartley was then the

holder thereof.    The writing was executed without consideration, and all that is claimed for it is, that the defendant therein admits that the chattel mortgage was in force.    We think the defendant had a right to prove the reasons for and the circumstances under which the admission was made.

V.    The court admitted evidence, over plaintiff's objections, tending to show the value of the use of the horse, and after instructing the jury that, if they found that defendant was entitled to possession of the property, they should determine the reasonable market value thereof, instructed as follows:    "You will also assess and determine the damage which defendant has sustained, if any, by the horse being wrongfully taken under the writ of replevin, and this damage is to be estimated by ascertaining from the evidence the net profits to plaintiff if he had been allowed to have possession of the horse from the time he was taken under the writ until the present time." Plaintiff concedes that, if defendant was compelled to or had elected to take a return of the property, he would be entitled to recover for its use, but contends that, as defendant elected to take judgment for the value of the horse, he is not entitled to damages for the use thereof, but simply for its value with interest.

Plaintiff says in argument:    "The defendant elects that it is a good sale of the horse, and says he prefers that amount of money to the horse.    Now, shall he be allowed to extort from the plaintiff eight hundred dollars additional, ostensibly for the detention of the horse, which by his act of election, he sold two years ago for one thousand, one hundred and twenty-five dollars, but which in reality is only for the use of the money, instead of the horse."    The fault in this argument is in assuming that there are any of the elements of contract or sale in the transaction, and that, by the

election, the horse became the plaintiff's from the time he took it under the writ. The relief accorded to the defendant is for a tort, and not upon contract, and the purpose of the law is to fully compensate him for all that he lost by the wrongful act. By the verdict it is determined that he was entitled to the possession and use of the horse from the time he was taken, and that the value of that use during the time the horse was wrongfully detained was eight hundred dollars. Clearly, the defendant lost that use by the wrongful taking and detention of the horse. The value of the use being in excess of legal interest on the value of the horse, the latter value with interest, would not afford full compensation. Cases are cited wherein it is held that the value of the property, with interest, was the measure of recovery. Such a rule would afford full compensation in instances where the use, of which the party was deprived, had no value, or its value did not exceed the interest allowed. In many cases, and especially where work animals were the subject of the controversy, a different rule has been applied. *Allen v. Fox*, 51 N. Y. 562; *Williams v. Phelps*, 16 Wis. 85; *Johnson v. Bailey*, 28 Pac. Rep. (Col. Sup.) 85; *Farrar v. Eash*, 31 N. E. Rep. (Ind. App.) 1125.

*Cook v. Hamilton*, 67 Iowa, 394, 25 N. W. Rep. 676, fully answers this contention. In that case it is said: "The theory upon which the provisions of the statute authorize the recovery of damages for the detention of property is based is that, as the property is owned by the plaintiff, he is entitled to its possession and use, and ought to recover the full value of such use in damages for its detention. The right of the plaintiff to the possession continued until he abandoned it by exercising the option given him by statute to accept the money or money judgment in place of the property. As he owns the property, and was entitled to its use up to that time, he ought to recover the full value thereof

in a judgment for damages." See, also, *McIntire v. Eastman*, 76 Iowa, 455; 41 N. W. Rep. 162. As defendant's right to the possession and use of the horse continued up to the time he elected to take a money judgment, he certainly lost that use by the wrongful detention, and is entitled to be compensated therefor.

VI. Plaintiff complains of certain rulings of the court in admitting and rejecting testimony with respect to the value of the horse and of his use. We have examined these several assignments, and do not think there was any prejudicial error in the rulings of the court. Our conclusion upon the whole record is that the judgment of ths district court should be AFFIRMED.