WALTER LUTHER, Appellee, v. NATIONAL INVESTMENT COMPANY et al., Appellants.

No. 42857.

JULY 31, 1936.

REHEARING DENIED NOVEMBER 27, 1936.

Lappen, Carlson & Clarke and Emerett C. Hansen, for appellants.

R. R. Nesbitt and Wendell Huston, for appellee.

DONEGAN, J.—This appeal involves an action in replevin and comes to us on re-submission after a rehearing granted.

In 1929, the plaintiff's brother, Otto H. Luther, entered

into a lease with the defendant, National Investment Company, covering a tract of real estate known as 1803 Keosauqua Way in the city of Des Moines. At that time this property was unimproved, and the lease provided that the lessor and lessee should join in a mortgage for $5,000 on said premises for the purpose of securing funds with which to erect a building thereon which was to be used by the lessee for a grocery and meat market. The mortgage was executed as arranged and, after the completion of the building, Otto H. Luther entered into possession thereof and remained therein until about 1933, when he defaulted in certain payments which were required to be made by him in accordance with the terms of the lease. The holder of the mortgage commenced an action of foreclosure and the National Investment Company, having made good the default in payments and forfeited the lease as to Otto H. Luther, in accordance with the terms thereof, brought an action against Otto H. Luther and the plaintiff herein, as well as other defendants, to quiet title to the premises. A decree quieting title was entered in accordance with which the defendant, National Investment Company, was declared to be the owner of the premises, free and clear of all liens and claims of either Otto H. Luther or the plaintiff herein.

Sometime prior to the forfeiture of the lease, Otto H. Luther had leased the property involved in this action to one A. J. Ross by a separate written lease which contained an option giving Ross the right to purchase the leased property. Subsequent to the execution of this lease to Ross, Otto H. Luther executed a bill of sale of the property involved in this action, transferring it to the plaintiff, Walter Luther, who is his brother, subject to the lease and option therein. The bill of sale recited that it was executed as security to Walter Luther, who had theretofore executed with Otto H. Luther a note in favor of a wholesale grocery company, and that, if and when Otto H. Luther paid the wholesale grocery company the amount of the note and paid any other money he owed said Walter Luther, the bill of sale would be of no further force and effect.

This action was brought by Walter Luther as plaintiff. In his petition he alleged that he was the owner of eight separately described articles of personal property upon the leased premises, one of such articles being described as "one big cooler". The answer filed by the defendants was in three counts. The first

count alleged the execution of the lease between Otto H. Luther and the defendant, National Investment Company; the execution of the mortgage pursuant to the provisions of the lease; the failure of the lessee to make payments as required by the terms of the lease; the action to foreclose the mortgage and reinstatement of same by defendant, National Investment Company, by making the payments in default; the forfeiture of the lease; and that the only right of plaintiff in respect to the property was to remove from the building purely personal property therein of which he was in fact the lawful owner. Count 2 of the answer alleged the institution by defendant, National Investment Company, as plaintiff, of the suit to quiet title in it and the decree entered therein. And Count 3 of the answer denied each and every allegation of the plaintiff's petition not admitted or otherwise pleaded. Trial was had to a jury which returned a verdict in favor of the plaintiff. From the judgment entered on the verdict and from the rulings of the court, the defendants appeal.

■■■ I. The first error on which a reversal is asked is the refusal of the court to direct a verdict in favor of the defendant, H. C. Hansen. Several matters were alleged as grounds for directing such a verdict. Most of these matters will be considered in subsequent portions of this opinion, and we shall confine ourselves at this point to a consideration of the proposition that said Hansen, as the stockholder and president of the defendant corporation, National Investment Company, was not liable for the torts of the corporation. So far as the record shows, all of the transactions conducted by Otto H. Luther and by the plaintiff, Walter Luther, and out of which this case arose, were transacted with Hansen. The corporation, of course, could not act except through its officers and agents. If there was a wrongful detention and conversion by the National Investment Company of the property claimed by plaintiff in this case, such wrongful action of the corporation was done by it through its officer and agent, Hansen. Defendants cite several cases, all of which, however are to the effect that an officer or agent of a corporation is not liable to its creditors for the debts of the corporation. Such, however, is not the proposition presented in this case. The wrong, if any, committed by one who denies to another the possession of personal property belonging to him, and to the possession of which he is entitled, is not a debt arising

out of contract, but it is a tort for which a corporation and its agent or officer may be held responsible. Semple v. Morganstern, 97 Conn. 402, 116 A. 906, 26 A. L. R. 21; Hartley State Bank v. McCorkell, 91 Iowa 660, 60 N. W. 197; 7 R. C. L. 504, 14a C. J. 175, 180; Donaldson v. R. R. Co., 18 Iowa 280, 87 Am. Dec. 391; Hubbard v. Weare, 79 Iowa 678, 44 N. W. 915. We find nothing in the cases cited by appellants or in the argument to support this ground of error upon which appellants rely.

██ II. Appellants' second ground of error is that the court erred in not directing the jury to return a verdict for both defendants, National Investment Company and H. C. Hansen. The record in this case, however, shows that the motion to direct a verdict in favor of both defendants, and upon which they here rely, was not filed or submitted to the court prior to the time that the case was submitted to the jury. The verdict of the jury in this case was returned on May 25, 1934, and the motion for a directed verdict in favor of both defendants was not filed until the 20th day of June, 1934. Under this state of the record, it is somewhat difficult to understand on what theory the appellants expect this court to consider the error which they claim the court committed in overruling their motion to direct the jury to return a verdict for both the defendants.

██ III. Appellants complain of the court's fourth instruction in which the court told the jury that, "the plaintiff is entitled to the immediate possession as a matter of law of all the property except the cooling room or one big cooler and the transformers and appliances connecting them to the building, and the only question for the jury to determine in connection with the personal property, other than the big cooler and the appliances, is whether there was a demand and refusal." In the petition filed by the plaintiff he had enumerated eight separate items of personal property of which he claimed to be the owner. One of these was described as "one big cooler". In the answer filed by the defendants they nowhere expressly disclaimed any right or ownership in any of this property. In count 1 of their answer they plead the provisions of the lease, the execution of the mortgage, the proceedings connected with the suit to foreclose the mortgage, and the forfeiture of the lease, and they expressly claimed that the cooling room near the southeast corner of the storeroom, the cooling appliances and the shelving in the store-

room extending along the entire north wall, were all built therein at the time of the construction of the building and improvements, became a part of the real property, and belong to the defendant, National Investment Company. In count 2 they stated that, "for further answer and as a complete defense to plaintiff's cause of action, these defendants and each of them, aver that at the time of the commencement of this action the defendant, National Investment Company, was the owner of said property, including the building and improvements on said property, subject only to said mortgage." And in count 3 of the answer is the statement that, "for further answer these defendants, and each of them, deny each and every allegation of said petition not admitted or otherwise pleaded to in this answer." There was nowhere in the answer any admission that the plaintiff was the owner of, or was entitled to the possession of, or had any right to any of the property claimed by the plaintiff in his petition. While the only express claims set out by the defendants had reference to the shelving and big cooler room, there was nothing in any part of the answer which amounted to an admission that they did not own all of the property or that they did not make claim to all of the property. This being the status of the pleadings, the plaintiff proceeded to introduce his evidence as to the ownership of the property. After a part of the plaintiff's evidence had been introduced, Mr. McLennan, one of the attorneys for the defendants, stated, in the presence of the court, that there was no controversy over anything except the big cooling room and its appliances; that the defendants did not claim anything else and that they never did claim anything else. The attorney for plaintiff thereupon asked that the matter of ownership be stipulated in the record. After some further discussion, the attorney for appellants agreed to file an amendment to the answer, confining the issues to the question of the big cooler, whether realty or personal property. The trial of the case proceeded and, after all the evidence was in, defendants filed an amendment to the answer which stated that it was filed, "to conform the pleadings to evidence given and introduced on the trial of said cause and to remove any doubt as to the meaning of the word property as used in defendants' answer, now on file in this cause, wherein reference is made to the property claimed by said defendants, prior to the commencement of this action, by averring, as the defendants here do, that the word property,

as so used in said answer, referred to and meant real property, which said defendants claim was attached to and a part of said building, as distinguished from personal property not attached to or a part of said building, as to which there has never been any controversy in so far as these defendants are concerned.'' After this amendment had been filed the plaintiff's attorney asserted that it did not admit plaintiff's ownership of the property, as had been agreed. Thereupon the court called the attorneys and the reporter and the following record was made:

"The Court addressing Mr. McLennan:

"Now so far as the record is concerned in this case as it now stands, from your viewpoint anyway, there is no controversy between these parties except to the cooler, isn't that a fact?

"Mr. McLennan: Yes, as far as I am concerned.

"The Court: So that the instructions are going to be definitely plain as to the ownership of this property, outside of this cooler, but governed by the proceedings as they have transpired here up to this time, but at this time *there is no dispute but what the plaintiff owns this property.*

"Mr. McLennan: *No, no question.*" (Italics are ours.)

Under this state of the record, we are unable to see how the court could have done otherwise than accept the admission of defendants' attorney that there was no dispute but what the plaintiff owned the property other than the cooler. And, under this state of the record, there was no error in that part of the instruction which told the jury that, as to all of such property other than the cooler, "the plaintiff is entitled to immediate possession".

■■■ This, however, did not dispose of the further question as to the right of the plaintiff to recover damages for the detention of his property by the defendants. It is undisputed in the evidence that all of the property claimed by plaintiff in his petition came into the possession of the defendants without any wrongful act or conduct on their part. This being true, no damages could be recovered against the defendants because of their possession of this property until a demand had been made upon them to surrender the property to the plaintiff and had been refused. Hart v. Wood, 202 Iowa 58, 209 N. W. 430;

Gilchrist v. Moore, 7 Iowa 9; Ruiter v. Plate, 77 Iowa 17, 41 N. W. 474; Smith v. McLean, 24 Iowa 322; Brandenburg v. Carmichael, 192 Iowa 694, 185 N. W. 486. It is the contention of the appellants that the record is insufficient to show such demand by the plaintiff and refusal by the defendants. The appellee contends that at least two demands for the property were made upon the appellants prior to the commencement of this action. The first of these demands was made by Paul W. Battles, a clerk who worked in the grocery store of the plaintiff, in October, 1933. At that time Mr. Battles, in company with his employer, the plaintiff herein, went to a hotel in which it appears the defendant Hansen had some interest and spent part of his time, and saw him sitting in a chair in the office, some distance from the desk. Battles spoke to the clerk at the desk and told him that he wanted the key so he could get the fixtures out of the storeroom. Battles testified that he saw the clerk go and speak to Hansen and that when the clerk came back to the desk he told Battles he could not have the key. Hansen testified that the clerk told him that Battles wanted the key, that he did not give him the key, but that he told the clerk to tell Battles to see his attorney, Judge Howe. Mr. Huston, one of appellee's attorneys, after having withdrawn from the case, testified that he had made a demand on Hansen for the property and was referred by Hansen to Judge Howe; that he went to Judge Howe's office and made his demands; that he had talked to Judge Howe twice before starting the suit; that he had told Judge Howe that he was starting suit for Mr. Luther for the recovery of the property or the value of it, that Hansen had referred him to Howe, and that he came to ask Howe if he could look at the property and make a demand for it; that Howe said he, Howe, would have to see Mr. Hansen and let Huston know; and that Huston waited until the last day of service for the January term before starting the suit. Opposed to this is the testimony of Howe and his clerk to the effect that Howe told Huston he could have everything in the building that was not part of the building.

Appellants contend that this evidence is insufficient to establish a demand and refusal. In 65 C. J., 47, it is said:

"No formal words are required to constitute a demand, whether it be oral or in writing, but it should be a request for

present delivery of the property, and must be clothed in absolute, unequivocal terms. The demand must be sufficiently definite and complete to apprise defendant of the specific property claimed, and must not embrace more property than the owner is entitled to recover, but a demand covering more than one is entitled to does not justify a refusal of what he may rightfully claim, unless he decline to accept anything less than the full quantity demanded.''

We think the evidence was sufficient to make it a question for the jury to determine whether the appellee had made such a demand that the appellants would have understood therefrom that he was claiming the right to the immediate possession of the property now claimed in his petition. Likewise, we think the evidence was sufficient to make a question for the jury as to whether the appellants refused to allow the property claimed by the appellee to be removed from the premises. It must be borne in mind that in all of this discussion we are speaking merely of property other than the big cooler and its appliances. Aside from the testimony of Judge Howe and his clerk to the effect that he informed Mr. Huston, the attorney for appellee, that they could remove all property which was not attached to the building, which is denied by the evidence of the appellee, there is no evidence that at any time prior to the statement made by Mr. McLennan, one of the attorneys for appellants, in the trial of the case, the appellants ever disclaimed ownership of the property mentioned in the petition, or the right to its possession, or that they even conditionally offered to allow the appellee to remove any part of it. The original answer filed contained no statement disclaiming ownership of any of the property, and the third count of the answer denied all allegations of the petition. So far as the record shows, there was nothing which amounted to an admission of plaintiff's right of possession of the property, much less to an offer to surrender the possession, until after the close of all the evidence when the attorney for the defendants admitted that there was no dispute but what the plaintiff owned the property other than the cooler.

 As we understand appellants' argument, it seems to be based on the theory that, even if there was a demand and a refusal prior to the trial of the case, this does not present a condition which would justify the court in submitting to the

jury the question of the plaintiff's right to recover damages for the wrongful detention of the property, because the plaintiff failed to prove his absolute ownership as alleged in his petition. Appellants contend that, having alleged unqualified ownership in the property, the plaintiff could not recover without proof of same, and that, regardless of the fact that defendants make no claim to ownership in the property other than the cooler, the burden was on the plaintiff to establish his right to the property by the strength of his own title and not by the weakness of defendants' title. It is true that in cases cited by appellants it is held that a plaintiff, in a replevin action, who alleges unqualified ownership, must prove unqualified ownership. In his petition the plaintiff also alleged that he held a bona fide bill of sale to said property, a copy of which was attached to the petition. Upon the trial of the case the plaintiff introduced the bill of sale, which stated that plaintiff had signed a note along with his brother, Otto H. Luther, and that if and when Otto H. Luther paid this note and any other money owed by him to the plaintiff, then the bill of sale would be void and of no further effect. There was further testimony, which was un-contradicted in the record, to the effect that Otto H. Luther had not paid the note, but that plaintiff had paid it, that the plaintiff had bought and paid value received for the property, and that Otto H. Luther had owned no interest in the property since July 1933. And there was testimony of Otto H. Luther to the effect that he had sold the property to the plaintiff. As to appellants' further contention that the property was leased and delivered by Otto H. Luther to another party named Ross, who occupied the premises and who had an option to purchase it under the lease, and that, therefore, the plaintiff's ownership was not absolute and unqualified, but was subject to the lease and option, there was the further testimony that Ross had moved out and that the Ross lease had expired. There was no testimony to contradict any of this evidence, and, when this evidence is considered in connection with the statement of the defendants' attorney, made during the trial of the case, that the defendants made no claim to the property other than the cooler, and in connection with the further statement of defendants' attorney, made at the close of all the evidence, that there was no dispute as to the property being owned by the plaintiff, we think the plaintiff's allegation as to the ownership in the

property was sufficiently sustained. A similar question was before this court in Harward v. Davenport, 105 Iowa 592, 596, 76 N. W. 487, 489, and in that case this court said:

"The petition alleges that the plaintiff is the 'absolute and unqualified owner' of the hogs in question, and it is said that the proof does not sustain the averment, for the reason that it appears without dispute that the hogs were incumbered by two mortgages when the execution was levied upon them. Subdivision 3 of section 3225 of the Code of 1873, under which this action arose, required that the petition, in an action for the recovery of specific personal property, should state 'the facts constituting the plaintiff's right to present possession thereof, and the extent of his interest in the property, whether it be full or qualified ownership.' · It was said in Kern v. Wilson, 73 Iowa 490, 35 N. W. 594, of this provision, that its object was 'to advise the defendant of the nature of the plaintiff's claim to the property, to the end that he could intelligently defend.' Section 2686 of the Code of 1873 provided that 'no variance between the allegations in a pleading and the proof is to be deemed material unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits.' And section 2729 of the same Code provided that 'a party shall not be compelled to prove more than is necessary to entitle him to the relief asked for, or any lower degree included therein. * * * ' If the plaintiff did not fully sustain the averments of his petition respecting his ownership, the defendant was not misled by the variance between the pleadings and the proof. Tolerton & Stetson Company knew of two of the mortgages, and before the levy was made acquired the ownership of them. A third mortgage, executed after the levy, is not entitled to any weight in this case. The evidence showed that the plaintiff was the owner of the hogs, although his ownership was limited by the mortgages. Hubbard v. Insurance Co., 33 Iowa 325, 333 [11 Am. Rep. 125]. It follows from what we have said and the statute quoted that proof that the ownership of the plaintiff was qualified by the chattel mortgages did not establish such a variance between the pleading and the proof as to defeat a recovery by the plaintiff."

■■■ IV. Appellants' final allegation of error upon which they rely for reversal is that:

"The court erred in submitting to the jury the questions of value and damage and permitting them to return verdicts for value and damage and rendering verdicts thereon, and in overruling the motion for new trial raising those questions."

We confess that we have experienced some difficulty in trying to follow this division of appellants' argument. A considerable portion of the argument seems to be based upon the thought that the plaintiff in this case was not the owner of the property, but a mere leinholder, and that, as such, he was not entitled to a money judgment for the value of the property. Since we have already determined that the evidence was sufficient to sustain the appellee's contention that he was the owner of the property and, as such, was entitled to the possession thereof, we deem it unnecessary to devote further attention to this portion of the argument.

In submitting the case to the jury the court gave them three forms of verdict. One of these forms of verdict referred to the property other than the big cooler. As to this property the court directed the jury that, there being no controversy, they should merely fill in the blanks indicating the value of the right owned by plaintiff in the property, and the damages, if any, sustained by plaintiff for its wrongful detention. The second form of verdict was given to the jury with the instruction that they should use it in case they found that the possession of the big cooler and the appliances thereto attached belonged to the plaintiff, and directed them that, in case they did so, they should fix the value of the right of plaintiff in the big cooler, and the amount of damages, if any, for its wrongful detention. The third form of verdict was to be used by the jury in case they found for the defendants as to the big cooler. The jury returned verdicts on the first two forms submitted to them. In the form of verdict applicable to the property other than the big cooler, they fixed the value of the right of the plaintiff in each separate item of this property, and they further fixed the plaintiff's damages by reason of the wrongful detention of this property at $500. As to the big cooler the jury fixed the plaintiff's right therein at $2,500, and fixed the plaintiff's damages for its wrongful detention at $400. We find no error in the submission of these matters to the jury or in the form of verdicts rendered.

In their argument the appellants seem to raise some objections in regard to the values fixed and the amount of damages allowed, and also in regard to the judgment entry. We find no sufficient allegations of error as to these matters to guide the court in considering them. The rules of this court contemplate that parties in assigning errors shall at least make some attempt to point out to the court the particular matters concerning which they complain, and the reasons why they claim error has been committed in connection therewith. Unless this is done, it can hardly be expected that this court can take the time to dig through the record and try to find out what items and matters an appellant may have had in mind in making a general and omnibus allegation of error.

We find no reversible error in the case, and it is, therefore, affirmed.—Affirmed.

PARSONS, C. J., and MITCHELL, KINTZINGER, RICHARDS, and HAMILTON, JJ., concur.