AMERICAN UNIVERSAL INSURANCE COMPANY, a corporation, Douglas Arthur Cole, William Dunsterville Denham and T. R. Ching, Plaintiffs,

v.

SCHERFE INSURANCE AGENCY, a corporation, and Paul C. Baughman, Defendants.

Civ. No. 1–60.

United States District Court
S. D. Iowa, E. D.

Dec. 31, 1954.

408

E. J. McManus and R. P. McManus, Keokuk, Iowa, and Gordon R. Close, of Lord, Bissell & Kadyk, Chicago, Ill., for plaintiffs.

J. Francis Phelan, Fort Madison, Iowa, for defendants.

RILEY, District Judge.

In this proceeding, commenced here by reason of diversity of citizenship of the parties, four insurers combine their actions against defendant Scherfe Insurance Agency, a corporation, and its president, Paul C. Baughman, for damages related to plaintiffs' insurance coverage on the property of Nabeeha Rashid, Fort Madison, Iowa.

The insured property was wholly destroyed by fire November 25, 1950. Plaintiffs made payment of losses under their several policies and subsequently commenced this action, claiming damages for the amount of the losses paid because of false and fraudulent representations alleged to have been made to the plaintiffs by the defendants to procure the insurance, and claimed by plaintiffs to have been believed and relied upon to their damage in the issuance and delivery of the separate policies.

The case was tried to a jury. At the close of all the evidence plaintiffs presented a motion for directed verdict in their favor as to both defendants. The motion to direct was denied. On his motion a verdict was directed for the defendant Baughman. A like motion by

his co-defendant was denied. The case was then submitted to the jury, which returned a verdict for the defendant Scherfe Insurance Agency. Plaintiffs filed a timely motion under Rule 50(b), 28 U.S.C.A. for judgment notwithstanding the verdict and in the alternative for a new trial. These motions have been orally argued and submitted with written briefs. The motion for new trial, in addition to specifying as error the action of the trial court in denying plaintiffs' motions for directed verdicts at the close of all the evidence, asserts also as error the court's dismissal as to the defendant Baughman and the giving and refusal of certain instructions.

It is without dispute in the record that plaintiffs issued policies of insurance against loss by fire on a building of Nabeeha Rashid, which was located on the highway four miles west of Fort Madison, Iowa, was used as a restaurant and had been completed about three months.

Paul C. Baughman, president of the defendant Scherfe Insurance Agency, a corporation (hereafter called Scherfe), conducted the correspondence separately with Chicago insurance brokers George F. Brown & Sons (hereafter called Brown) and Stewart, Smith, Inc. (hereafter called Smith). These two latter, by a general mail solicitation which included Scherfe, were answered by the latter's letter of August 16, 1949, to Brown, saying among other things, "We have a risk upon which we are having difficulty securing sufficient fire and extended coverage," and described the location, use, amount of coverage, rate and needs, and asked Brown "whether or not you will be able to place the desired amount with your London underwriters." Brown answered on August 18, 1949, that "before we can tell you what we can do for you on this risk, there are several things we would like to know," which included total insurable value of buildings, contents, co-insurance and rates on existing coverage, and also "the assured's previous loss experience." To

this Scherfe replied, August 19, 1949, stating among other things:

"The insured owns a similar restaurant building in Fort Madison with a value of around $20,000.00. In February 1945 there was a fire in this building which started in the basement from a defective stoker. The loss on the building amounted to around $7500.00 with only $3000.00 insurance. The damage was immediately repaired."

In answer to the Smith letter, Scherfe wrote June 2, 1949, also saying, "We have a risk upon which we are having difficulty securing sufficient fire and extended coverage," and stating ownership, location, use for a "restaurant," recent completion, insurance needs, existing coverage and rates. Smith answered June 7, 1949, that "It is very likely that we can handle this risk for you. Please let us have the following information." Six items were listed, including "b. His past record as respects bankruptcies, failures and fires." On June 8, 1949, Scherfe answered:

"She has never had any bankruptcies or failures. In February 1945 there was a fire in a building owned by her which started in the basement from a defective stoker. The loss on the building amounted to around $7500. At the time she carried but $3000. insurance. The damage was immediately repaired."

Brown and Smith, in reliance, it is alleged, upon the representations of the defendants, effected insurance with the plaintiffs on the Nabeeha Rashid property. On expiration, it is alleged, the policies were renewed in reliance on the same representations. On November 25, 1950, a fire of unknown origin totally destroyed the premises and the plaintiffs were required to make payment under their policies to the insured. The amounts paid are not in dispute.

This action followed, brought by the plaintiffs to recover from the defendants the damages claimed to have been suffered by the plaintiffs as the result of the

alleged fraudulent misrepresentation of the defendants as to the insured risk.

In its separate answer defendant Scherfe admitted writing the letter of August 19, 1949, to Brown as to the one fire loss in February, 1945, and also admitted that:

"the said Nabeeha Rashid has since 1940 sustained three fire losses in addition to the one reported by this Defendant in its letter of August 18, 1949, as follows: a loss March 9th, 1940, in the amount of $1,015.00, a loss on June 9th, 1941, in the amount of $4,000.00, a loss on March 21st, 1944, in the amount of $75.00, but this Defendant had no knowledge thereof at the time said representation was made to Geo. F. Brown & Sons as referred to in paragraph 11 of Plaintiffs' Complaint."

Likewise, defendant Scherfe admitted the writing of the letter to Smith on June 8, 1949, as to the one fire loss in February, 1945, and restates and realleges the portion last above quoted as to "three fire losses in addition to the one reported." The defendant Scherfe denied the statements as to the fire losses "were known by defendants to be false and untrue when they were made," as alleged in paragraph 12 of the complaint; denied the alternative statement that if the defendants "did not know of the falsity of the statements when made, that they knew that they had no knowledge of the truth of the statements and were negligent in making such statements," as alleged in paragraph 13 of the complaint; and denied, as is alleged in paragraph 14 of the complaint, that had plaintiffs or their representatives "been informed by defendants of the true facts in answer to the inquiries and had the true nature and name of the premises been revealed to them and not concealed, the risk would have been rejected and no policy of insurance would have been issued."

Defendant Baughman in a separate answer adopted the answer of the defendant Scherfe, "and further states that this Defendant, as an individual or in his individual capacity, did not participate in any of the transactions and things complained of by the Plaintiffs in their Complaint and that at all times and places that this Defendant participated in the matters alleged in this Answer he was acting as an officer of the Defendant, Scherfe Insurance Agency."

Despite defendants' denial in the pleadings, the evidence of the plaintiffs stands without contradiction that plaintiffs did not know of the previous fire record of Nabeeha Rashid, that their policies of insurance were issued in complete reliance upon the representation of defendants with respect to such fire record, and that the policies were issued following such representations and would not have been issued had plaintiffs known the truth as to the history of the insured's previous fires. Defendants' admissions in answer, as quoted above, admit the falsity of the representations contained in the correspondence. The testimony is uncontradicted that the representations were material factors in the issuance of the policies. Plaintiffs made no separate investigation as to the truth of defendants' representations concerning the history of insured's previous fires, nor were required to do so. There is no dispute as to the amount of the plaintiffs' damage, if plaintiffs are entitled to recover.

### As to Motion for Judgment Notwithstanding the Verdict

■ The law of Iowa controls. After a review of the pleadings and proof as disclosed by the record the court is of the opinion that plaintiffs were entitled by the law of Iowa to have their motion for a directed verdict, made at the close of all the evidence, sustained, and that their motion for judgment notwithstanding the verdict accordingly should be sustained.

The principal case upon which plaintiffs rely is that of Riley v. Bell, 1903, 120 Iowa 618, 95 N.W. 170, where a purchaser of realty brought an action against a broker for damages resulting from the broker's alleged fraud, misrep-

resentation and concealment regarding the property purchased. It was claimed that during the negotiation, in response to plaintiff's inquiry, defendant represented that to his personal knowledge the condition of the title of the land was perfect in all respects, when in fact he had no knowledge concerning the condition. The evidence showed a mortgage existed on the land, as the result of which plaintiff was required to pay a judgment on foreclosure to protect his title. In sustaining a judgment on a verdict for plaintiff the court said, 120 Iowa at page 626, 95 N.W. at page 172:

> "If defendant in fact knew the condition of the title, it was his duty to truthfully represent the same, if he essayed to speak at all upon the subject. If he did not know the condition of the title, it was his duty to frankly avow that fact, if he essayed to speak at all. Here the charge is that he claimed to have personal knowledge to the effect that the title was perfect. Now, if plaintiff acted upon such representation in good faith, and to his damage, both reason and authority unite in authorizing a recovery for the damage thus sustained. Under the circumstances here presented, we think it does not lie in the mouth of one charged with such a fraud to say that an examination of the county records would have disclosed his untruth and laid bare his attempted fraud. Where one is shown to have made statements of the character here in question, the law presumes that he intends that the same shall be relied upon. If the party to whom they are made does in good faith rely thereon, he may recover, notwithstanding it may appear that opportunities were open to him to ascertain the truth by investigation and examination. As applied to a case such as we have before us, it is well settled that one who, to advance his own interests, falsely asserts the existence of a state of facts, knowing the other party to be ignorant, cannot complain if he is believed. * * *"

120 Iowa at page 629, 95 N.W. at page 173:

> "One who induces another to walk in the way of a pitfall, ought not to be absolved from liability for a resulting injury, even though he might, if permitted to do so, convince a jury that his scheme would not have been successful, had his victim displayed ordinary business judgment."

As to the matter of scienter the opinion contains this statement, 120 Iowa at page 624, 95 N.W. at page 172:

> "A further attack is made upon the instruction for that no reference is made therein to the necessity of proof of *scienter*. It may be conceded that, in an ordinary action for deceit by means of false and fraudulent representations, proof of *scienter* is essential. This is the general rule, and has been adhered to by this court in a line of cases beginning with Holmes v. Clark, 10 Iowa 423, and ending with Boddy v. Henry, 113 Iowa 462, 85 N.W. 771, 53 L.R.A. 769. But we think such rule cannot be accepted as controlling in a case such as we now have before us. Where the wrong complained of is that the defendant has induced the plaintiff to act by falsely and fraudulently representing that a certain material fact is true, within his personal knowledge, and injury and damage result therefrom, both reason and authority unite in dictating the wholesome doctrine that he shall not be heard thereafter to assert that in fact he had no knowledge upon the subject concerning which the representation was made by him."

Speaking of scienter in Baker v. Bockelman, 208 Iowa 254, at page 258, 225 N.W. 411, at page 412, the court said:

> "It is the settled law in Iowa that one who asserts, as a fact, without qualification, something that he does

not know to be true, asserts, by implication at least, that the thing asserted is of his own knowledge, and true, and he is not permitted, as against one to whom the representation is made as an inducement to act, and who is thereby induced to act, to thereafter assert that he did not know his statement to be false. See 26 C.J. 1109 et seq.

"It was not a mere matter of opinion on the part of the plaintiff when he told the defendant, at the time of the conference that the conditional sales contract was registered or recorded in conformity to the Wisconsin statute. It was a statement of fact, and the defendant had the right to rely upon said fact. It was a false statement or representation, and under the quite universal rule of law constituted a representation of fact upon which the defendant could predicate fraud, especially so in a court of equity, as in this case, wherein the defendant pleaded said matter in his answer as a matter of defense."

See also Dimond v. Peace River Land & Development Co., 182 Iowa 400, at page 408, 165 N.W. 1032, at page 1035, where the Iowa court says:

"When one falsely states that to be true which he does not know to be true, for the purpose of inducing another to rely upon it and act upon it, he is just as guilty of actionable fraud in the event he is accepted at his word as if he knew at the time it was not true. One cannot falsely state a fact to be true as of his own knowledge, about which he has no knowledge, for the purpose of inducing another to act, and then, when action follows, escape liability on the mere showing that he did not know the fact to be untrue at the time he made the statement. When one asserts a fact in order to induce action on the part of another, it is rightly assumed that he has knowledge of the fact about which he makes the positive assertion, and

when it is acted upon, cannot be heard to say that he did not know, at the time he asserted the fact, that it was untrue, and escape liability."

Here, defendants' denials are to that effect.

The correspondence between defendants and Brown and Smith discloses that Scherfe had been, and was, handling her insurance for Nabeeha Rashid. In each letter Scherfe said, "We have a risk upon which we are having difficulty securing sufficient fire and extended coverage." Brown was then asked "whether or not you will be able to place the desired amount with your London underwriters," and Smith was asked "if you can furnish coverage on this risk will you issue policy and let us have it by early mail?" Both Brown and Smith, before accepting the risk for the plaintiffs, sought the information as to the past record of fires and received like answers as to the single fire in 1945. The special situation disclosed by the interchange of letters between the defendants and Brown and Smith was such that defendants' relationship and means of knowledge as to previous fires was of a character to make it his duty to know the truth or falsity of the representations upon which plaintiffs relied.

It is the law of Iowa that in situations such as this, recovery may be had for negligent representations in an action for fraudulent representations. Scienter, or a knowledge of the falsity of the representations relied upon, "under proper circumstances, * * * may be implied." Gray v. Shell Petroleum Corp., 212 Iowa 825, 237 N.W. 460, 463. See also Baker v. Bockelman, supra, and Davis v. Central Land Co., 162 Iowa 269, 143 N.W. 1073, 49 L.R.A.,N.S., 1219. Of the Davis case it is said in Tott v. Duggan, 199 Iowa 238, 242, 200 N.W. 411, 413, where some of the cases, including Riley v. Bell, supra, are reviewed:

"In Davis v. Central Land Co., 162 Iowa 269, 143 N.W. 1073, 49 L.R.A., N.S., 1219, the rule announced in the Boddy Case was said to be un-

doubtedly correct in cases where the representation was more or less a matter of opinion or deduction from other facts, but that it was manifest the writer of the opinion had also in mind the rule cited with approval from McKown v. Furgason, 47 Iowa 636, 'that representation of a matter as true as of personal knowledge of which the person making the representation had no knowledge whatever is a false representation.' And, after an extensive review of authorities, it was further said that it was well established doctrine that *scienter* might be proved by showing (1) actual knowledge of the falsity of the representation; (2) that the statement was made as of the knowledge of the party or in such absolute unqualified and positive terms as to imply his personal knowledge of the fact, when in truth he had no knowledge whether the statement was true or false; or (3) that the party's special situation or means of knowledge were such as to make it his duty to know as to the truth or falsity of the representation.

"The doctrine so announced has been repeatedly and consistently reaffirmed in numerous later cases. Haigh v. White Way Laundry Co., 164 Iowa 143, 145 N.W. 473, 50 L. R.A.,N.S., 1091; Richards & Comstock v. Frederickson, 171 Iowa 669, 153 N.W. 151; Hess v. McCardell, 182 Iowa 1121, 166 N.W. 470; Ulch v. Wessel, 184 Iowa (134), 138, 166 N.W. 94; Davis v. Walker, 191 Iowa 1268, 183 N.W. 612, 184 N.W. 385."

Here, the falsity is admitted and the circumstances are such that scienter is implied.

At the close of plaintiffs' evidence the defendants made an extended motion to direct a verdict in their favor, which was renewed at the close of all of the evidence. Plaintiffs at that time made motion for directed verdict in their favor. It is that latter motion upon which plaintiffs now rely, under Rule 50(b),

for their right to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with their motion for a directed verdict.

The rule in Iowa as to verdict on motion is tersely stated in Kern v. Kiefer, 204 Iowa 490, at page 491, 215 N.W. 607, at page 608, in these words:

"A verdict should be directed: (1) Where but one reasonable conclusion can be drawn from the proof adduced. (2) Where the questions of fact are clearly established by unconflicting evidence. (3) Where there is no substantial evidence to overcome a prima facie case. (4) Where by giving the opposite party the benefit of the most favorable view of the evidence the verdict, against him is demanded. 38 Cyc. 1565 et seq. See Tucker v. Tucker, 138 Iowa 344, 116 N.W. 119; Cherry v. Des Moines Leader, 114 Iowa 298, 86 N.W. 323, 54 L.R.A. 855; Johnson v. Buffalo Center State Bank, 134 Iowa 731, 112 N.W. 165; First Nat. Bank of Montour v. Brown, 197 Iowa 1376, 199 N.W. 272."

In the last case cited, First Nat. Bank of Montour v. Brown, the writer of the opinion was De. Graff, J., who wrote the opinion in the Kern case, from which the quotation is taken. In the First Nat. Bank case, which involved the holdership in due course of a negotiable instrument, the same writer said [197 Iowa 1376, 199 N.W. 273]:

"To sustain the proposition advanced by the appellant in the instant case we would be compelled to say that the defendant has an inherent right to have a jury pass upon his claim or that the credibility of an uncontradicted and unimpeached witness in *all cases* presents a jury question. We cannot make such a pronouncement." (Emphasis ours.)

This language was quoted with approval by our Court of Appeals in Col-

**414**

thurst v. Lake View State Bank, 8 Cir., 18 F.2d 875. In the case of Gregg v. Middle States Utilities Co., 228 Iowa 933, at page 957, 293 N.W. 66, 132 A.L.R. 415, the court carries the quotation from Kern v. Kiefer, supra, which is also cited in Roth v. Headlee, 238 Iowa 1340, 29 N.W.2d 923, as to the same four factors governing the direction of a verdict.

 Giving the defendants the benefit of the most favorable view of the evidence, there is but one reasonable conclusion to be drawn from the proof if we are to follow the rule laid down in the case of Riley v. Bell, supra, and others. It is recognized that it is the rule that in considering the question of the sufficiency of the evidence we must view the evidence in the light most favorable to the prevailing party (in this case, the defendants). If, when so considered, it can be said there is substantial evidence that should have been submitted to the jury, the verdict should stand. A mere scintilla of evidence, however, is not sufficient. Terry v. Muller, 8 Cir., 190 F. 2d 170. In reaching this conclusion the court is not required to weigh the credibility of any witnesses. If that were so, then the question would be for the jury and not for the court. Johnson v. Dierks Lumber & Coal Co., 8 Cir., 130 F.2d 115. The court has considered the rules laid down in Mattson v. Central Electric & Gas Co., 8 Cir., 174 F.2d 215, Watkins v. Oaklawn Jockey Club, 8 Cir., 183 F. 2d 440, Danaher v. United States, 8 Cir., 184 F.2d 673, and Simpson Feed Co. v. Continental Grain Co., 8 Cir., 199 F.2d 284, and yet reaches the same conclusion.

 In all the circumstances, therefore, the court finds that the motion for judgment notwithstanding the verdict should be sustained and that plaintiffs' motion for directed verdict at the close of all the testimony should be sustained and plaintiffs should have judgment as prayed.

### As to Plaintiffs' Motion for New Trial

 Plaintiffs coupled with their motion for judgment notwithstanding the verdict their alternative motion for new trial based, among other things, on the court's alleged error in sustaining the motion of the defendant Paul C. Baughman for dismissal as to him, the refusal to give certain instructions, and the giving of certain instructions, as set forth in the motion for new trial. Both motions were presented. It has been held by the United States Supreme Court that the grant of the motion for judgment notwithstanding the verdict under Rule 50(b) does not effect an automatic denial of the alternative motion for new trial. To the contrary, Mr. Justice Roberts, the writer of the opinion so holding. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, at page 251, 61 S.Ct. 189, at page 194, 85 L.Ed. 147 said:

"The rule contemplates that either party to the action is entitled to the trial judge's decision on both motions, if both are presented."

The writer said, 311 U.S. at page 253, 61 S.Ct. at page 195:

"If alternative prayers or motions are presented, as here, we hold that the trial judge should rule on the motion for judgment. Whatever his ruling thereon he should also rule on the motion for a new trial, indicating the grounds of his decision."

* * *

And further, 311 U.S. at page 254, 61 S. Ct. at page 196:

"Should the trial judge enter judgment n. o. v. and, in the alternative, grant a new trial on any of the grounds assigned therefor, his disposition of the motion for a new trial would not ordinarily be reviewable, and only his action in entering judgment would be ground of appeal. If the judgment were reversed, the case, on remand, would be governed by the trial judge's award of a new trial."

Following the Ward case, the Fifth Circuit, in Atkins v. Halliburton, etc., Co., 196 F.2d 876, 878, speaking of the filing of a motion for judgment n. o. v. and in the alternative a motion for new trial, said:

"The better practice is for the trial Court, in the event the motion for a judgment notwithstanding the verdict is granted, to rule also upon the motion for new trial, where alternatively presented, as authorized by Rule 50 of the Federal Rules of Civil Procedure, 28 U.S.C.A. However, failure to do so does not bar further consideration of such motion."

In the same Circuit, Foreman v. Texas & N. O. R. Co., 205 F.2d 79, again recognized the duty of the trial court, where such alternative motions are filed, to rule upon both motions.

In the instant case plaintiffs' motion for new trial is based upon several grounds which the court finds unnecessary to discuss because of its ruling on three of the grounds stated. It is believed that Instruction No. 3 given to the jury placed an undue burden upon the plaintiffs by requiring them to prove the falsity of the representations alleged to have been made by Baughman and that they were known by Baughman to be false. Likewise, the burden placed upon the plaintiffs by Instruction No. 6 placed an undue burden upon the plaintiffs in the light of the record.

The court believes itself to have been in error in directing a verdict in favor of the defendant Baughman. The evidence disclosed him to have been the principal stockholder, as well as the president and manager of the defendant Scherfe. He conducted all of the correspondence relating to the representations as to the fire record of the insured, Nabeeha Rashid, and handled all of the transactions between Brown and Smith, which resulted in the issuance of the several policies by the plaintiffs. The general rule as to personal liability of an officer for torts in such a situation is thus stated in 19 C.J.S., Corporations, § 845, p. 271:

"Broadly speaking a director, officer, or agent of a corporation is not, merely by virtue of his office, liable for the torts of the corporation or of other directors, officers, or agents.

"He is, however, as in the case of torts committed by agents generally, discussed in Agency § 220, liable in damages for injuries suffered by third persons because of his own torts, regardless of whether he acted on his own account or on behalf of the corporation and regardless of whether or not the corporation is also liable. He cannot escape liability on the ground that in committing the tort he acted as a director, officer, or agent of the corporation, or on the ground that the corporation may also be liable. As in any case, it is, of course, necessary that the facts show the commission of a tort before the officer may be held liable therefor."

The rule in Iowa is found in Luther v. National Inv. Co., 222 Iowa 305, 268 N. W. 589. It was an action brought against the president of a corporation for a conversion while acting in its behalf. The Supreme Court of Iowa held that the tort for which the corporation was held responsible was one for which its agent or officer would be so held. The court announced its ruling in the following language, 222 Iowa at page 308, 268 N.W. at page 590:

"So far as the record shows, all of the transactions conducted by Otto H. Luther and by the plaintiff, Walter Luther, and out of which this case arose, were transacted with Hansen. The corporation, of course, could not act except through its officers and agents. If there was a wrongful detention and conversion by the National Investment Company of the property claimed by plaintiff in this case, such wrongful action of the corporation was done by it through its officer and agent, Hansen. Defendants cite several cases, all of which, however are to the effect that an officer or agent of a corporation is not liable to its creditors for the debts of the corporation. Such, however, is not the proposition

presented in this case. The wrong, if any, committed by one who denies to another the possession of personal property belonging to him, and to the possession of which he is entitled, is not a debt arising out of contract, but it is a tort for which a corporation and its agent or officer may be held responsible. Semple v. Morganstern, 97 Conn. 402, 116 A. 906, 26 A.L.R. 21; Hartley State Bank v. McCorkell, 91 Iowa 660, 60 N.W. 197; 7 R.C.L. 504; 14a C.J. 175, 180; Donaldson v. Mississippi & M. R. Co., 18 Iowa 280, 87 Am. Dec. 391; Hubbard v. Weare, 79 Iowa 678, 44 N.W. 915."

The court finds that the motion for new trial should be sustained and a new trial will be granted in the event that this court's ruling on plaintiffs' motion for judgment notwithstanding the verdict is reversed on appeal.